# SUPPORTING EXHIBITS TO PETITION
# FOR WRIT OF HABEAS CORPUS
# BY STATE PRISONER

1

**INDEX**

2

(SUPPORTING EXHIBITS WRITTEN IN THE ORDER AS I CITED THEM ON MY SEPARATE
MEMORANDUM.)

3    Trial Transcript pgs.223-224.....................PG.1

4    Trial Transcript pgs.376-381.....................PG.2

5    Trial Transcript pgs.441-445.....................PG.2

Trial Transcript pgs.554-556.....................PG.3

6    Court of Appeal Fourth Appellate District
7    Division One, Opinion No.D049184.............PG.3,6,9,12,14,16,17

Police Reports 31 & 121.......................PG.4

8    Letter to Trial Counsel dated 4/19/2007.........PG.4

9    San Diego Regional Arrest/Juvenile Contact Report.............PG.5

10   Mr.Martinez's Criminal Record...................PG55

Trial Transcript pgs.1330-1331 & Police Report 100...............PG.6

11   Police Report 51.................................PG.7

12   Mr.Lamas's Criminal Record......................PG.7

13   Police Report 105...............................PG.8

Police Report 111...............................PG.9

14   Document "Benefits for Maria Soto"..............PG.10

15   Mr.Soto's Notarized Letter......................PG.11

16   Trial Transcript pgs.2628 & 2750................PG.11

17   Trial Transcript pg.1597...............PG.12

Trial Transcript pg.1641...............PG.12

18   Ms.Hurtado's Interview Report...................PG.13

19   Trial Transcript pgs.66-67...............PG.14

20   Ms.Hurtado Letters...............PG.14

Letter to Mr.White dated 2/23/2006............PG.15

21   Check to Mr.White.......................PG.15

22   Mr.Huynh's Interview Report...................PG.15

23   Trial Transcript pgs.580-593...................PG.17

Trial Transcript pgs.937-938...................PG.18

24   Trial Transcript pgs.1011-1012.................PG.18

25   Trial Transcript pg.1017.......................PG.18

26   Trial Transcript pgs.1491-1492.................PG.18

Trial Transcript pgs.1493-1495.................PG.19

27   Trial Transcript pgs.1509-1510.................PG.19

28

i

1    VICTIM OF A ROBBERY OR ANY KIND OF ASSAULT?

2            YES, SIR.  [JUROR NO. 3]?

3            JUROR NO. 3:  I TOO ALSO GREW UP IN NATIONAL

4    CITY.  AND I HAVE NEVER BEEN ASSAULTED, BUT I HAVE BEEN

5    BULLIED AS A KID IN MY EARLY TEENS BY GANG MEMBERS.  IT

6    WOULD HAVE NO EFFECT.

7            THE COURT:  YOU SAID, "BULLIED BY GANG MEMBERS."

8            JUROR NO. 3:  WHEN I WALKED HOME THEY TEASED ME,

9    PUSHED ME AROUND, ASKED ME WHERE I WAS FROM, WHERE I DO

10   LIVE, WHY AM I WALKING THROUGH THEIR NEIGHBORHOOD.  JUST

11   STUPID STUFF LIKE THAT.

12           THE COURT:  DID THEY EVER ACTUALLY ASSAULT YOU?

13           JUROR NO. 3:  I GOT PUNCHED IN THE STOMACH OR

14   SOMETHING LIKE THAT.

15           THE COURT:  AND WHEN THAT WOULD HAPPEN, WHAT

16   WOULD YOU DO?

17           JUROR NO. 3:  THERE WAS NOTHING YOU REALLY COULD

18   DO.  YOU WENT TO SCHOOL WITH THE SAME PEOPLE, AND THEY

19   KNEW WHERE YOU LIVED.

20           THE COURT:  OKAY.  SO THERE WAS A CERTAIN

21   ELEMENT OF FEAR IN IF YOU WERE TO REPORT IT TO THE POLICE

22   OR TO RETALIATE IN ANY WAY?

23           JUROR NO. 3:  CORRECT.

24           THE COURT:  NOW, DO YOU KNOW WHAT GANG THOSE

25   PEOPLE BELONGED TO?  WAS IT MORE THAN ONE GANG?

26           JUROR NO. 3:  I BELIEVE IT O.T.N.C.

27           THE COURT:  WHICH IS WHAT?

28           JUROR NO. 3:  OLD TOWN NATIONAL CITY.

Case 3:08-cv-00572-DMS-POR    Document 1-3    Filed 03/26/2008    Page 4 of 92

1    THE COURT:  OKAY.  THIS CASE, AS YOU UNDERSTAND

2    IT, INVOLVES ALLEGATIONS OF GANG ACTIVITIES.  DO YOU THINK

3    YOU CAN BE FAIR IN EVALUATING THAT KIND OF ACTIVITY?

4    JUROR NO. 3:  I BELIEVE I COULD.  EVERYTHING

5    DEPENDS UPON ON THE EVIDENCE.

6    THE COURT:  OKAY.  EVEN THOUGH YOU HAVE BEEN

7    BULLIED BY GANG MEMBERS, DO YOU HAVE AN IMPRESSION ABOUT

8    GANGS IN GENERAL THAT'S GOING TO MAKE IT HARD FOR YOU TO

9    BE FAIR?

10   JUROR NO. 3:  NO.

11   THE COURT:  OKAY.  SOMEBODY ELSE THAT HAS BEEN A

12   VICTIM OF A CRIME OR VIOLENCE?  THIS IS AN EXPANDING

13   CIRCLE.

14   MR. LANKFORD, I DIDN'T ASK YOU BEFORE.  THE

15   BEATING THAT OCCURRED, WAS THAT A GANG MEMBER THAT YOU

16   TOOK THAT BEATING FROM?

17   PROSPECTIVE JUROR NO. 10:  YES.  BACK WHEN I WAS

18   TALKING ABOUT THIRD STREET AND INSANE BOYS, I LIVED ON

19   THIRD STREET.  I KNEW A LOT OF THE GUYS FROM THAT GANG.

20   SO BY LIVING ON THAT STREET THEN, IT WAS, YOU KNOW, INSANE

21   BOYS, THEY WOULD ASK YOU WHERE YOU LIVED.  YOU SAY THIRD

22   STREET, AND EVERYTHING WENT ON FROM THERE.

23   THE COURT:  IF YOU TOLD AN INSANE BOY THAT YOU

24   LIVED ON THIRD STREET, WAS THAT --

25   PROSPECTIVE JUROR NO. 10:  THEY SEEN ME AS ONE

26   OF THIRD STREET.  NOT BEING ONE, JUST LIVING THERE.  BUT

27   THEY WOULD FIGURE GUILTY BY ASSOCIATION, I GUESS.

28   THE COURT:  OKAY.  ALL RIGHT.  CIRCLE GETS

1   YOURSELF HAVING MADE THE NECESSARY DECISION, OR IS IT

2   GOING TO PREVENT YOU FROM FAIRLY EVALUATING THE EVIDENCE?

3   THAT'S THE QUESTION THAT IS REALLY ON THE TABLE.

4          PROSPECTIVE JUROR NO. 19:  I FEEL LIKE I ALREADY

5   HAVE AN OPINION, AND I THINK THAT'S UNFAIR TO START WITH.

6          THE COURT:  WHEN DID YOU DEVELOP THAT OPINION?

7          PROSPECTIVE JUROR NO. 19:  YESTERDAY DURING THE

8   QUESTIONING.

9          THE COURT:  YOU MEAN YOU DEVELOPED AN OPINION ON

10  THE CASE DURING THE QUESTIONING YESTERDAY?

11         PROSPECTIVE JUROR NO. 19:  NO.  JUST THAT I DID

12  NOT LIKE A CERTAIN PERSON, SO I DON'T FEEL I WOULD -- I

13  DON'T KNOW IF THIS MATTERS OR NOT, BUT I AM JUST BRINGING

14  IT UP BECAUSE IT IS MY NATURE.  I DON'T WANT TO BE SITTING

15  ON A JURY WHERE THAT MATTERS, AND IT'S, LIKE, WHY IS SHE

16  THERE?

17         THE COURT:  YOU SAID YOU DON'T LIKE A CERTAIN

18  PERSON.  WHO IS IT?

19         PROSPECTIVE JUROR NO. 19:  IT'S ONE OF THE

20  ATTORNEYS.  I AM UNCOMFORTABLE WITH HIM.

21         THE COURT:  OKAY.  AND SO WE ARE GOING BACK TO

22  ONE OF THE QUESTIONS THAT IS ON THE BOARD THAT YOU CANNOT

23  SEE ANYMORE.  THAT MIGHT -- YOU ARE CONCERNED THAT BECAUSE

24  YOU ARE UNCOMFORTABLE WITH ONE OF THE ATTORNEYS, THAT

25  MIGHT AFFECT YOUR ABILITY TO BE FAIR IN THIS CASE?

26         PROSPECTIVE JUROR NO. 19:  I AM NOT THINKING

27  THAT THAT IS WHAT I WOULD DEFINITELY WANT TO DO, BUT I

28  THINK IT MAY HAPPEN.  AND I DON'T FEEL COMFORTABLE NOW

1   WITH IT, IF THAT DOES HAPPEN, BECAUSE I AM ALREADY FORMING

2   AN OPINION.  AND I DON'T THINK THAT IS RIGHT THAT I AM

3   DOING THAT.

4          THE COURT:  LET'S GO IN THE BACK AND DISCUSS

5   THIS A LITTLE BIT FIRST.

6       (THE COURT, ALL COUNSEL, THE COURT REPORTER, AND

7          PROSPECTIVE JUROR NO. 19 EXIT THE COURTROOM.)

8   (THE FOLLOWING PROCEEDINGS WERE HELD IN CHAMBERS OUTSIDE

9          THE PRESENCE AND HEARING OF THE JURY:)

10         THE COURT:  ALL RIGHT.  WE ARE OUTSIDE THE

11  PRESENCE OF THE REST OF THE PANEL WITH PROSPECTIVE JUROR

12  MS. RING.

13         I KNOW IT WAS UNCOMFORTABLE TO BE TALKING ABOUT

14  THIS TOPIC.  IT'S GOING TO BE UNCOMFORTABLE TALKING ABOUT

15  IT IN HERE TOO, BUT I DO NEED TO UNDERSTAND WHAT YOUR

16  CONCERN IS, WHERE THE PROBLEM IS IN YOUR MIND.

17         PROSPECTIVE JUROR NO. 19:  I JUST THINK AFTER

18  THINKING ABOUT IT LAST NIGHT, I AM UNCOMFORTABLE, YOU

19  KNOW, MAKING A DECISION ON SOMEONE'S LIFE.  SOMETHING LIKE

20  THEY -- IT WOULD BE, LIKE, THEY WOULD SPEND YEARS IN

21  PRISON.  AND I DON'T KNOW.

22         I HAVE REALLY BAD BUYER'S REMORSE.  DID I DO THE

23  RIGHT THING?  AND I FEEL -- I GET ANXIETY ATTACKS

24  SOMETIMES.  AND I FEEL LIKE I AM UNCOMFORTABLE WITH IT.

25         AND YESTERDAY DURING QUESTIONS, I WAS

26  UNCOMFORTABLE WITH ONE OF THE ATTORNEYS.  I FELT THAT HE

27  WAS BEING VERY -- TALKING DOWN TO PEOPLE AND BEING -- I

28  DON'T KNOW WHAT THE WORD IS.  POMPOUS OR SOMETHING TO THE

1  POINT WHERE I WAS UNCOMFORTABLE. AND I WAS GETTING WHERE

2  I WAS FEELING I DIDN'T LIKE HIM ALREADY, AND I DIDN'T WANT

3  THAT TO SWAY MY THOUGHTS OF, YOU KNOW, THE PERSON THAT IS

4  BEING, YOU KNOW --

5          THE COURT: THE DEFENDANT.

6          PROSPECTIVE JUROR NO. 19: YES. WHO HE IS

7  DEFENDING. EVEN THOUGH I DON'T WANT TO THINK THAT WAY,

8  EVEN THOUGH I AM AFRAID THAT I MIGHT I JUST FEEL

9  UNCOMFORTABLE AND I THINK SOMEBODY ELSE COULD DO A BETTER

10  JOB.

11          THE COURT: SOMEBODY ELSE MIGHT BE ABLE TO DO A

12  BETTER JOB IN SOME VACUUM OR HYPOTHETICAL SCENARIO, AND

13  SOMEBODY ELSE MIGHT BE MORE COMFORTABLE IN MAKING A

14  DECISION. BUT THERE IS A REASON YOU ARE UNCOMFORTABLE

15  BECAUSE THEY ARE VERY IMPORTANT DECISIONS. AND WE WANT

16  YOU TO BE UNCOMFORTABLE ABOUT THEM. THAT'S WHAT THIS IS

17  ALL ABOUT.

18          PROSPECTIVE JUROR NO. 19: OKAY.

19          THE COURT: IT'S NOT GOING TO BE AN EASY

20  DECISION. THE BURDEN OF PROOF IS NOT EASY. NONE OF THE

21  THINGS, YOU KNOW, IN THIS CASE ARE MEANT TO BE EASY FOR

22  YOU AS A JUROR OR IN ANY CASE BECAUSE WE ARE DEALING WITH

23  SERIOUS EVENTS AND SERIOUS CONSEQUENCES TO EVERYONE THAT

24  IS INVOLVED.

25          SO FROM MY PERSPECTIVE, I LIKE JURORS TO BE A

26  LITTLE UNCOMFORTABLE, BECAUSE THAT TELLS ME THAT THEY

27  UNDERSTAND THE GRAVITY OF THE TASK.

28          PROSPECTIVE JUROR NO. 19: UH-HUH.

1    THE COURT:  NOW, HAVING SAID ALL OF THAT, THE

2    QUESTION REALLY BECOMES, OF COURSE, IS WHETHER OR NOT YOU

3    CAN DO THE TASK; OKAY?  IT'S HARD.  AND WE KNOW IT'S HARD.

4    CAN DO YOU IT, AND CAN DO YOU IT IN A FAIR MANNER?

5    AND, YOU KNOW, WHICH BRINGS US TO THE OTHER

6    POINT THAT YOU JUST MADE ABOUT BEING CONCERNED ABOUT

7    WHETHER OR NOT YOU CAN BE FAIR BECAUSE YOU KNOW ONE OF THE

8    ATTORNEYS IN THE CASE HAS CONDUCTED HIMSELF IN A WAY THAT

9    HAS CAUSED YOU SOME KIND OF CONCERN.

10    PROSPECTIVE JUROR NO. 19:  UH-HUH.

11    THE COURT:  WHETHER IT'S -- I AM NOT SURE WHAT

12    THE CONDUCT OR WHATEVER IT WAS THAT THE PERSON WAS DOING,

13    AND YOU THINK THAT THAT MAY AFFECT YOUR VIEW OF THE

14    EVIDENCE; IS THAT WHAT I'M HEARING?

15    PROSPECTIVE JUROR NO. 19:  WELL, I AM AFRAID THE

16    WHOLE TIME I WOULD BE THINKING AND NOT REALLY -- I WOULD

17    BE MORE LIKE -- AND NOT REALLY THINKING ABOUT WHAT'S GOING

18    ON BECAUSE, YOU KNOW, I DON'T KNOW IF THAT'S EVEN AN

19    ISSUE.  MAYBE OTHER PEOPLE HAVE THAT AND I AM BEING TOO

20    CRITICAL.

21    THE COURT:  YOU ARE TALKING ABOUT DISTRACTION

22    FROM WHAT IS GOING ON IN THE EVIDENCE BECAUSE OF THE

23    ATTORNEYS?

24    PROSPECTIVE JUROR NO. 19:  UH-HUH.

25    THE COURT:  OKAY.

26    PROSPECTIVE JUROR NO. 19:  AND THEN, LIKE, I

27    DIDN'T SLEEP WELL.  IF I -- IF, YOU KNOW, WHEN IT GETS TO

28    THE POINT WITH DECISIONS, IT IS GOING TO RUIN MY HEALTH, I

1   AM NOT GOING TO BE ABLE TO SLEEP, AND I AM GOING TO TAKE

2   ZOLOFT, WHICH I HAVE BEEN TRYING TO GET OFF -- I DON'T

3   WANT TO GO BACK ON MORE BECAUSE OF ANXIETY BECAUSE OF

4   DOING THIS.

5         IT'S JUST A LOT OF -- THAT'S WHAT WENT THROUGH

6   MY MIND LAST NIGHT.  I DON'T THINK I AM A GOOD JUROR, SO I

7   THOUGHT I SHOULD BRING THAT UP.

8         THE COURT:  ANYBODY WANT TO ASK ANY QUESTIONS?

9         MR. SEMCO:  WHICH LAWYER IS IT AND WHAT IS IT

10  THAT HE SAID?

11        PROSPECTIVE JUROR NO. 19:  IT WAS YOU.  AND YOU

12  KIND OF LUMPED EVERYBODY TOGETHER WHEN YOU MADE COMMENTS

13  TO THE -- LIKE "DON'T BE AFRAID."

14        MR. SEMCO:  DON'T BE AFRAID.  JUST TELL US.

15        PROSPECTIVE JUROR NO. 19:  AND THEN YOUR

16  QUESTIONS TO SOME OF THE PEOPLE.  YOU ARE NOT AS MAYBE AS

17  THOUGHTFUL OR NICE WITH YOUR QUESTIONING.

18        MR. SEMCO:  RIGHT.

19        PROSPECTIVE JUROR NO. 19:  I FELT YOU WERE

20  INTERROGATING PEOPLE.

21        AND I THOUGHT, "GOSH, I DON'T WANT TO FEEL

22  GUILTY ON THE STAND JUST TO BE QUESTIONED."  AND I FELT

23  SORRY FOR SOME OF THE PEOPLE THAT YOU ARE QUESTIONING,

24  WHERE WITH THE OTHER TWO, I DIDN'T FEEL THIS WAY.

25        MR. SEMCO:  LET ME ASK YOU THIS.  I CAN'T FIX

26  THIS.  CERTAINLY NOT TODAY.  PROBABLY NOT IN MY LIFETIME.

27  I AM SORRY; OKAY?

28        BUT MY CLIENT IS THE GUY SITTING NEXT TO ME.

1    LET'S SAY HIS LAWYER IS POMPOUS AND GETS ON PEOPLE'S

2    NERVES.  ARE YOU SAYING THAT YOU CANNOT BE FAIR TO

3    MR. CONTRERAS?

4            PROSPECTIVE JUROR NO. 19:  I WOULD WANT TO BE

5    FAIR TO HIM, BUT I AM AFRAID THE WHOLE TIME HIS ATTORNEY

6    WOULD BE TALKING I WOULD, LIKE, BE THINKING WHY IS HE

7    SAYING THAT AND WHY AM I NOT CONCENTRATING WITH WHAT I

8    SHOULD BE CONCENTRATING ON?

9            I WOULD BE, LIKE -- YOU KNOW, IT WOULD BE LIKE A

10   DISTRACTION IF YOU ARE TRYING TO WATCH SOMETHING ON T.V.

11   AND THERE IS KIDS SCREAMING OR SOMETHING, YOU KNOW?  IT'S

12   KIND OF IRRITATING, YOU KNOW.  AND THEN, YOU KNOW, YOU ARE

13   NOT PAYING ATTENTION TO WHAT YOU ARE SUPPOSED TO.

14           MR. SEMCO:  IS THE ZOLOFT FOR DEPRESSION?

15           PROSPECTIVE JUROR NO. 19:  NO.  ANXIETY.

16           MR. SEMCO:  DO YOU FEEL ANXIETY BECAUSE IT'S A

17   MURDER CASE, OR DO YOU FEEL ANXIETY BECAUSE OF THE WAY I

18   BEHAVED?

19           PROSPECTIVE JUROR NO. 19:  BOTH.  THAT'S WHAT I

20   THOUGHT ABOUT LAST NIGHT.  BUT I THINK IF IT WAS NOT A

21   MURDER CASE, FOR SOME REASON I THOUGHT IT WAS ABOUT

22   TAGGING OR SOMETHING, AND THEN THAT'S OKAY.

23           IT'S A MURDER CASE.  I THOUGHT, "OH, MY GOSH.

24   THIS PERSON COULD GO TO JAIL FOR A LONG TIME.  DO I WANT

25   TO BE RESPONSIBLE FOR THAT?"  AND I THOUGHT, "OH, MY GOSH.

26   YOU KNOW, I DON'T KNOW IF I WOULD WANT 15 PEOPLE TO

27   DECIDE.  I WOULD RATHER HAVE A JUDGE DECIDE, BECAUSE HE

28   HAS MORE KNOWLEDGE OF THE LAW AND WHAT'S GOING ON AND HAS

1          PROSPECTIVE JUROR NO. 23:  I DON'T LIKE YOUR

2   PRESENTATION.

3          MR. SEMCO:  OKAY.  WHAT ELSE?

4          PROSPECTIVE JUROR NO. 23:  YOU JUST DON'T COME

5   ACROSS AS VERY SINCERE.

6          MR. SEMCO:  YOU THINK I AM INSINCERE?

7          PROSPECTIVE JUROR NO. 23:  IN A WAY, YES.

8   BECAUSE TO BE A LAWYER, WHETHER OR NOT YOU AGREE WITH

9   WHATEVER -- WITH WHATEVER -- WHOEVER YOU ARE REPRESENTING,

10  YOU HAVE TO TRY AND LOOK LIKE YOU ARE SINCERE.  AND I

11  DON'T FEEL THAT YOU ARE BEING SINCERE.

12         MR. SEMCO:  TELL ME WHAT YOU THINK I WAS NOT

13  BEING SINCERE ABOUT.

14         PROSPECTIVE JUROR NO. 23:  ONE OF THE THINGS WAS

15  THE QUESTIONS YOU WERE ASKING.  PEOPLE HAVE FEELINGS, YES.

16  BUT IN THIS KIND OF CASE, THOSE OF US THAT LIVE IN

17  SAN DIEGO COUNTY, WE HAVE A FEELING OR TWO ABOUT WHAT

18  GANGS DO.

19         MR. SEMCO:  OKAY.

20         PROSPECTIVE JUROR NO. 23:  AND WHAT THEY -- HOW

21  THEY ACT.

22         MR. SEMCO:  ALL RIGHT.

23         PROSPECTIVE JUROR NO. 23:  THEY ARE

24  IRRESPONSIBLE.  THEIR LACK OF RESPECT, THE DAMAGE THEY DO,

25  THE BULLINESS.  YOU DON'T EVER HEAR ANYTHING ABOUT

26  SOMETHING GOOD THAT A GANG HAS DONE.  SO WHEN YOU STARTED

27  ASKING ABOUT FEELINGS --

28         MR. SEMCO:  YES.

1    JUST TO ASK THAT QUESTION, RIGHT?

2              PROSPECTIVE JUROR NO. 23:  EVERYBODY HAS AN

3    OPINION ABOUT IT.  I THINK THE WORD THAT -- I THINK THE

4    THING THAT I FIND BEING INSINCERE IS THE FACT THAT YOU ASK

5    ABOUT THEIR FEELINGS.  I DON'T KNOW HOW MANY MEN EVER ASK

6    ANYONE ABOUT THEIR FEELINGS.

7              MR. SEMCO:  THIS MAN DOES.

8              PROSPECTIVE JUROR NO. 23:  YOU MIGHT.  BUT FOR

9    ME, IT STRUCK AS A WRONG CHORD.

10             MR. SEMCO:  IT'S LIKE A WRONG GENDER ROLE?

11             PROSPECTIVE JUROR NO. 23:  RIGHT.

12             MR. SEMCO:  I FEEL -- YOU FEEL LIKE I AM

13   EFFEMINATE?

14             PROSPECTIVE JUROR NO. 23:  NO, NOT AT ALL.  BUT

15   I DON'T THINK THAT IT WAS A CORRECT QUESTION, WHEN THERE

16   IS OTHER QUESTIONS THAT COULD HAVE BEEN ASKED.

17             MR. SEMCO:  LIKE WHAT?

18             PROSPECTIVE JUROR NO. 23:  LIKE, IF YOU ARE IN A

19   POSITION WHERE YOU SEE A GANG MEMBER AND YOU KNOW THEY ARE

20   GANG MEMBER, WHAT DO YOU DO?  HOW DO YOU REACT?

21             MR. SEMCO:  YOU BELIEVE I SHOULD HAVE ASKED

22   THAT?

23             PROSPECTIVE JUROR NO. 23:  I THINK SO.  BECAUSE

24   BEING IN THE JOB I AM IN, AND I RIDE THE TROLLEY ALL THE

25   TIME, I SEE THEM.  I HAVE SEEN THE DAMAGE THAT THEY DO.  I

26   HAVE HEARD OF SHOOTINGS AT OUR STATIONS.  INNOCENT PEOPLE

27   WHO HAVE GOT CAUGHT IN THEIR WAR.  AND I DON'T HAVE MUCH

28   RESPECT FOR THEM.  I WOULD BE A LOUSY JUROR BECAUSE I

1    HEARD -- I HAVE SEEN THE DAMAGE.  I AM CONTINUALLY EXPOSED

2    TO IT.

3             MR. SEMCO:  LET ME ASK YOU THIS QUESTION,

4    BECAUSE I THINK WE ARE NOT GETTING TO THE -- NOT THAT YOUR

5    OPINION ABOUT ME DOES NOT COUNT, BECAUSE IT DOES, BUT IT

6    WOULD -- I AM NOT SAYING THAT THESE GUYS ARE GANG MEMBERS

7    OR WILL BE PROVED GANG MEMBERS.  THAT'S UP TO THE

8    EVIDENCE.

9             PROSPECTIVE JUROR NO. 23:  YES.  THAT'S UP TO

10   THE EVIDENCE.

11            MR. SEMCO:  THE QUESTION I HAVE TO YOU IS, WHAT

12   IF A GANG MEMBER IS CHARGED WITH A CRIME?  IS HE ENTITLED

13   TO A FAIR TRIAL?

14            PROSPECTIVE JUROR NO. 23:  MOST DEFINITELY.  WE

15   ALL ARE.

16            MR. SEMCO:  WHAT?

17            PROSPECTIVE JUROR NO. 23:  WE ALL ARE.

18            MR. SEMCO:  WE ALL ARE ENTITLED TO A FAIR TRIAL?

19            PROSPECTIVE JUROR NO. 23:  YES.

20            MR. SEMCO:  SO EVEN A GANG MEMBER CAN HAVE A

21   FAIR TRIAL; IS THAT WHAT YOU ARE SAYING?

22            PROSPECTIVE JUROR NO. 23:  I AM NOT SAYING THAT.

23            MR. SEMCO:  OF COURSE NOT.  THAT WOULD BE

24   INSINCERE OF YOU TO SAY THAT.

25            PROSPECTIVE JUROR NO. 23:  THAT'S RIGHT.

26            MR. SEMCO:  NO FURTHER QUESTIONS, YOUR HONOR.

27            THE COURT:  MR. WHITE.

28            MR. WHITE:  THANK YOU, YOUR HONOR.

1    CURRENTLY SITTING.

2          AND THE PROBLEM I HAVE IS, IF THAT JUROR -- WE

3    HAVE TWO JURORS THAT HAVE EXPRESSED VERY STRONG EMOTIONAL

4    REACTION TO MR. SEMCO.  AND I AM SURE THAT THAT SENTIMENT

5    MUST BE SHARED BY SOME OF THE OTHER 12 MEMBERS.  WE DON'T

6    KNOW THAT BECAUSE THEY WERE NOT VOIR DIRED ON THAT ISSUE.

7    BUT MY CONCERN IS THAT SINCE WE DO NOT HAVE ANTAGONISTIC

8    DEFENSES, IN A SENSE, BOTH OF OUR CLIENTS ARE IN THE SAME

9    SITUATION, I AM AFRAID THAT THAT ATTITUDE MAY SPILL OVER

10   TO MY CLIENT AND AFFECT HIS RIGHT TO A FAIR TRIAL.  EVEN

11   TO EFFECTIVE ASSISTANCE OF FAIR COUNSEL.

12          I SPENT A LOT OF TIME THINKING ABOUT THIS AND

13   HOW TO APPROACH IT.  BUT I THINK BECAUSE OF THAT ATTITUDE

14   THAT WAS EXPRESSED IN OPEN COURT, I AM AFRAID THAT MY

15   CLIENT'S RIGHT TO EFFECTIVE ASSISTANCE, ON THE SIXTH

16   AMENDMENT RIGHT TO FAIR TRIAL, DUE PROCESS, AND FIFTH AND

17   FOURTEENTH AMENDMENT HAVE BEEN COMPROMISED.  AND SO I

18   THINK THE ONLY SOLUTION WOULD BE SEVERANCE OR MISTRIAL AND

19   WE START OVER.

20          I DON'T KNOW WHAT ELSE TO DO.  I AM JUST

21   CONCERNED ABOUT THAT ATTITUDE.  I HAVE NEVER HAD THIS

22   SITUATION COME UP BEFORE, AND I THINK IT'S UNIQUE, AND I

23   DON'T KNOW THE SOLUTION.  BUT I AM CONCERNED ABOUT THOSE

24   ISSUES.

25          THE COURT:  MR. ROMO?

26          MR. ROMO:  I DON'T THINK HE HAS A WELL-FOUNDED

27   FEAR.  IT'S A FEAR, BUT I DON'T KNOW THAT THERE IS ANY --

28   THE JURORS WHO EXPRESSED THEMSELVES EXPRESSED THEIR

1     PERSONAL FEELINGS. ALL OF THE JURORS WERE THERE. IF THEY

2     HAD SIMILAR FEELINGS, THEY WERE GIVEN EVERY OPPORTUNITY TO

3     SAY WHETHER OR NOT THERE WAS ANY OTHER REASON THEY HAD

4     THAT THEY COULD NOT BE FAIR. NOT ONE SINGLE ONE RAISED

5     THEIR HANDS. SO I DON'T THINK THAT THIS IS ANYTHING THAT

6     COUNSEL NEEDS TO WORRY ABOUT. SO I JUST DON'T SEE THIS AS

7     SOMETHING THAT WARRANTS ANY ONE OF THOSE THINGS. EITHER

8     SEVERANCE OR A MISTRIAL.

9        MR. SEMCO: IT'S HUMILIATING. I FEEL VERY BAD

10    ABOUT THIS. I DID NOT INTEND ANY HARM TO THE JURY PANEL

11    OR TO OFFEND ANYBODY. BUT CLEARLY, IF IT HAD ONLY BEEN

12    ONE -- CLEARLY, SOMETHING HAS HAPPENED. AND I FEEL AWFUL

13    ABOUT THIS.

14       THE COURT: IT'S TWO. TWO PEOPLE DISAGREED WITH

15    YOU. ONE IN HERE IN THIS ROOM IN CHAMBERS AND THE OTHER

16    ONE IN OPEN COURT.

17       TWO PROBLEMS WITH WHAT HAPPENED IN OPEN COURT

18    IS; NO. 1, IS THAT YOU PURSUED IT IN OPEN COURT AND,

19    SECONDLY, MR. WHITE, YOU DIDN'T OBJECT TO IT WHEN IT WAS

20    GOING ON IN OPEN COURT.

21       I SHARE MR. ROMO'S VIEW IN TERMS OF THE REST OF

22    THE PANEL. I DON'T SEE -- IF EVERYBODY WAS GIVEN AN EQUAL

23    OPPORTUNITY TO EXPRESS ANY CONCERNS ABOUT BEING IN THIS

24    TRIAL, AND WE HAD TWO JURORS THAT WERE VERY CANDID IN

25    TERMS OF SPEAKING OUT WITH REGARD TO THEIR CONCERNS ABOUT

26    MR. SEMCO AND HOW MR. SEMCO GRATES ON THEM INDIVIDUALLY, I

27    DON'T ATTRIBUTE THAT PARTICULAR PERSPECTIVE TO ANYBODY

28    OTHER THAN THOSE PEOPLE THAT EXPRESSED IT. THE FACT THAT

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Stephen M. Kelly, Clerk

DEC 1 5 2006

Court of Appeal Fourth District

|  |  |
|---|---|
| In re RAMON IVAN CONTRERAS, | D049184 |
| on | (Super. Ct. No. CR236551) |
| Habeas Corpus. | |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices McIntyre, Haller and McDonald.

### BACKGROUND

A jury found Ramon Ivan Contreras guilty of the first degree murder of Jimmy Martinez and attempting to murder Filiberto Lamas. In Contreras's related appeal, we set forth the procedural and factual history underlying his convictions and affirm the judgment against him. (*People v. Contreras*, D047266 [nonpub. opn., filed simultaneously with this petition].) Contreras filed the instant petition claiming his convictions were the product of ineffective assistance of counsel. We ordered that the petition be considered with the appeal and directed the clerk's office to send a copy of the petition to all other counsel.

SUPLEMENTAL TO COMMON NARRATIVE    CR 04-000365
AR 04-000363
AR 04-000370

entered into evidence under this case number. For details on the search, see Detective CONLON's supplemental.

A TIP volunteer was called and responded to the address at ███████. Prior to our leaving, Alexandria MARTINEZ told Detective CONLON and I that approximately three years ago Jimmy had gotten in a fight with subjects. He had since been sent to Campo and had an upcoming court date on January 26, 2004 reference the incident. According to Alexandria, on the occasions when Jimmy saw the other subjects involved in the fight, the subjects swore they would kill Jimmy MARTINEZ. Alexandria MARTINEZ also stated that approximately two months ago, Jimmy's truck was tagged while it was parked on Oakdale. The truck had since been cleaned up and they no longer had it. MARTINEZ did not know who the taggers were, but claimed Jimmy did.

At approximately 0645 hours, Detective CONLON and I returned to 1319 East Lexington where we contacted the reporting party, Julie Diane CROWNOVER. For details on CROWNOVER's statement, see the following supplemental.

At approximately 0700 hours, we spoke with CROWNOVER's roommate, Katrina Ann SUSZKO. For details on SUSZKO's statement, see the following supplemental.

At approximately 0720 hours, Detective CONLON and I went to 1315 East Lexington and contacted resident, Bertha ROE. ROE stated she did not see or hear anything related to the incident, but believed her son might have. She stated her son, Kirk F. ROE, left home at approximately 0600 hours for work, and should return at approximately 1800 hours. Bertha ROE stated she would have her son call us with any information he may have about the incident.

At approximately 0730 hours, Detective CONLON and I went to 1307 East Lexington and contracted residents, Elois OTTE and Louis OTTE. For details on their statements, see the following supplemental.

At approximately 0738 hours, Detective CONLON and I went to 1301 East Lexington and spoke with resident Angela LANDEROS, and her daughters Melissa LANDEROS and Marie LANDEROS. For details on the LANDEROS' statements, see the following supplementals.

At approximately 0745 hours, Detective CONLON and I went to 1299 East Lexington. No one was home so Detective CONLON left his business card on the door.

At approximately 0750 hours, Detective CONLON and I went to 1312 Exeter, which is the residence directly behind the residence of the reporting party. No one was home, so Detective CONLON left a business card on their front door.

**CONFIDENTIAL**
This case has been released by the El Cajon Police Department pursuant to California Penal Code 11075-11081. Subsequent distribution of information contained is restricted by Sec. 11140-11144 P.C. Release of juvenile records is restricted by TNG vs Superior Court.
EL CAJON POLICE DEPARTMENT
4

000031

000365.mr1

SUPPLEMENTAL TO COMMON NARRATIVE   CR 04-000365
AR 04-000363
AR 04-000370

---

After obtaining a statement from SOTO reference the incident, Detective BATES and I asked her questions regarding her relationship with MARTINEZ, as well as information about the OEK gang that he belonged to and any problems they have been having.

SOTO advised she met MARTINEZ through a friend, Adele HERNANDEZ. She stated she had been dating him for approximately three months. SOTO knows that MARTINEZ used to be a participant in the OEK gang, however after being locked up for an attempt murder charge, he has begun to make drastic changes. She stated that he does not use drugs or alcohol anymore.

MARTINEZ used to be the leader of the OEK gang. One of the rival gangs to OEK is another gang called the EL Cajon Locos. They primarily hang out in the area of the Key Largo Apartments at 380 North Mollison. SOTO advised that they knew this when they pulled into the complex earlier in the evening, however LAMAS wanted to visit his girlfriend and she happens to live there. SOTO advised they have gone there in the past and not encountered any problems.

We asked SOTO if she knew of any incidents that may have sparked this incident. She advised there have been ongoing problems between OEK and the Locos. These problems have been going on for over a year, however recently there have been several incidents. She stated that OEK has been tagging the Loco's area at 380 North Mollison. One of the incidents that happened most recently was a fight between OEK and the Locos. During that incident, OEK members stabbed several members of Locos with knives. As a result of this incident, the individuals from Locos left and after obtaining what SOTO refers to as a "strap", referring to a gun, they came back. They fired shots at two OEK members by the names of Raul, and a second subject by the name of Chacal. SOTO did not know Chacal's real name. She described the subjects as driving a white Ford pickup truck. She stated that the two subjects were shot at as a result of the stabbing because Chacal had stabbed one of the Locos.

SOTO stated she knows about this incident because Raul had come to her several days prior to today, and asked if he could have Jimmy's number. SOTO advised Raul that she could call Jimmy for him, which she did. Raul then told SOTO that some of his "home boys" had stabbed someone, they came back and shot at them, referring to the white pickup truck. SOTO stated that although she had not heard the gunshots, her sister had heard them in the middle of the night.

Raul told SOTO he believed the Locos would be looking for them, and were going to get them. Raul wanted to warn MARTINEZ to be careful. Shortly after, MARTINEZ arrived and talked to Raul. They spoke for a short time, and then MARTINEZ and SOTO left.

CONFIDENTIAL

This case has been released by the El Cajon Police Department pursuant to California Penal Code 11075-11081. Subsequent distribution of information contained is restricted by Sec. 11140-11144 P.C. Release of juvenile records is restricted by TNG vs Superior Court.

EL CAJON POLICE DEPARTMENT

5

000121

Mr.Semco,

My father Ramon Contreras Sr. told me that I must Write you a letter stating that I give my father authorisation to have my client file. Therefore I Ramon Contreras Jr. give you David Semco full authorisation to give my father all documentation that pertains to my case, any computer disc that contain pictures or reports, and any evidence that the prosecution gave to you before I went to trial. Particularly the letters that were being copied by the prosecution during the time my codefendant and I spent in county jail. Thank you Mr.Semco.

This letter is hereby signed by I Ramon Contreras Jr. currently incarcerated at Kern Valley State Prison on this 19th day of April 2007.

X *Ramon Contreras*

Ramon Contreras Jr.

# SAN DIEGO REGIONAL
## ARREST/JUVENILE CONTACT REPORT

**AGENCY NUMBER:** 01-019838

| ARREST REPORT | | WARRANT | AGENCY | EL CAJON P.D. | ARJIS ASSISTED? | Y / N | PAGE 1 of | CRIME CASE NUMBER 01019138 |
|---|---|---|---|---|---|---|---|---|

JUVENILE CONTACT — □ LOCAL □ OUT

| ARREST DATE | TIME | BEAT/DISTRICT | RELATED REPORTS (TYPE, NUMBER) |
|---|---|---|---|

**CITATION NUMBER**

NOTIFY WARRANT — RELATED REPORTS: NCR-01-019838, -01-019899

**ADD'L CHGS.** ☑   CJ/LC □   BCLS □   □ or □ 845PC □ B1 □ B2 □   **ADULT RELEASES**

RACE CODE LEGEND: A= WHITE  B= BLACK  C= CHINESE  D= OTHER ASIAN  F= CAMBODIAN  G= FILIPINO  J= GUAMANIAN  H= HISPANIC  I= INDIAN  J= JAPANESE  K= KOREAN  L= LAOTIAN  O= OTHER  P= PACIFIC ISLANDER  S= SAMOAN  U= HAWAIIAN  V= VIETNAMESE  W= WHITE  Z= ASIAN INDIAN

**CHARGE(S):** 245(A)(1) PC ADW

| PERSON ARRESTED (L.F.M) | RACE | SEX | AGE | D.O.B. | P.O.S. | | HT. | WT. | BUILD | HAIR | EYES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MARTINEZ, Jimmy NMN (JR) | H | M | 16 | 7-21-85 | | | 6' | 175 | THIN | BR | BR |

**NICKNAME** | **HOME PHONE:**

| ALIAS/MAIDEN NAME (L.F.M) | ARRESTEE'S ADDRESS 1420 OAKDALE EL CAJON | CITY | 5934840 |
|---|---|---|---|

**BUS. PHONE:**

| MILITARY YES □ | OCCUPATION/RANK STUDENT | EMPLOYER/SCHOOL GRANITE Hills HIGH | ADDRESS | CITY EL CAJON | HOME PHONE N/A |
|---|---|---|---|---|---|

| EMERGENCY CONTACT/NEXT OF KIN (L.F.M) MARTINEZ, ALEJANDRA | ADDRESS S/A | |
|---|---|---|

| IS SUBJECT A SUSPECTED USER OF NARCOTICS/DRUGS? | YES □ | INTERPRETER REQUIRED? | YES □ | LANGUAGE | | SUSPECT'S RELATION TO VICTIM(S): | RELATIVE | ACQUAINTANCE | STRANGER |
|---|---|---|---|---|---|---|---|---|---|

| LOCATION OF ARREST | CITY | LOCATION OF OFFENSE 119 W. WASHINGTON EC | CITY | OFFENSE DATE 12-6-01 | OFFENSE TIME 2020 |
|---|---|---|---|---|---|

| CITIZEN ARREST? YES □ | ARRESTING OFFICER | I.D. | ADMONISHED BY | DO YOU UNDERSTAND EACH OF THESE RIGHTS THAT I HAVE EXPLAINED TO YOU? | STATEMENT YES |
|---|---|---|---|---|---|

**DO YOU WANT TO TELL ME WHAT HAPPENED?**

### ARRESTEE DESCRIPTION

| HAIR LENGTH/TYPE | HAIR STYLE | FACIAL HAIR | COMPLEXION | SPEECH | VOICE | DRIVER'S LICENSE NO. D3474809 | STATE CA |
|---|---|---|---|---|---|---|---|
| 1 BALD | 1 AFRO/NAT. | 1 CLEAN SHAVE | 1 ACNE | 1 ACCENT | 1 DISGUISED | | |
| 2 COLLAR | 2 BRAIDED | 2 FULL BEARD | 2 DARK | 2 LISPS | 2 HIGH PITCH | **SOCIAL SECURITY NO.** | |
| 3 LONG | 3 BUSHY | 3 FU MANCHU | 3 FRECKLED | 3 MUMBLES | 3 LOUD | | |
| 4 NECK | 4 GREASY | 4 GOATEE | 4 LIGHT | 4 OFFENSIVE | 4 LOW PITCH | **FBI NO.** | |
| 5 SHORT | 5 MILITARY | 5 LOWER LIP | 5 MEDIUM | 5 QUIET | 5 MEDIUM | | |
| 6 SHOULDER | 6 PONYTAIL | 6 MUSTACHE | 6 PALE | 6 RAPID | 6 MONOTONE | **CII NO.** | |
| 7 COARSE | 7 PROCESSED | 7 NONE/FUZZ | 7 POCKED | 7 SLOW | 7 NASAL | | |
| 8 FINE | 8 STRAIGHT | 8 SIDEBURNS | 8 RUDDY | 8 STUTTERS | 8 PLEASANT | **OTHER I.D.** | **TYPE** |
| 9 THICK | 9 WAVY/CURLY | 9 UNSHAVEN | 9 SALLOW | 9 TALKATIVE | 9 RASPY | | |
| 10 THINNING | 10 WIG | 10 VAN DYKE | 10 TANNED | 10 OTHER: | 10 SOFT | | |
| 11 WIRY | 11 OTHER: | 11 OTHER: | 11 OTHER: | | 11 OTHER: | | |
| OTHER: SHAVED | | | | | | **UNDOCUMENTED PERSON** | **YES** |
| 5  6 | 8 | 1 | 5 | 5 | 5 | | |

**FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, MANNERISMS, ETC.)**

**CLOTHING DESCRIPTION**

| SUSPECT VEHICLE: | YEAR 1984 | MAKE TOYOTA | MODEL COROLLA | COLOR/COLOR BLUE-GRN | BODY TYPE 4DR | LICENSE NO. 2RXL751 | STATE CA |
|---|---|---|---|---|---|---|---|

**ADDITIONAL VEHICLE IDENTIFIERS (CHROME, DAMAGE, ETC.)** | **VIN NUMBER** | **DISPOSITION OF VEHICLE**

| REGISTERED OWNER (L.F.M) MARTINEZ ALEJANDRA | ADDRESS 1420 OAKDALE | CITY EL CAJON |
|---|---|---|

**DISPOSITION OF EVIDENCE**

### COMPLNTS. EVID. / DESCRIPTION

| | NAME (L.F.M) | ADDRESS | CITY | PHONE | RACE | SEX | AGE | D.O.B. | ARRESTED | ADDN'L COMPANIO LISTED |
|---|---|---|---|---|---|---|---|---|---|---|
| #1 | MOEDANO Marcos | 909 Leslie #5 | EC | 461.2852 | H | M | 17 | 7-4-84 | YES A | |
| #2 | NORTON Benjamin | 1544 E. Washington | | 588.5905 | W | M | 17 | 2-2-84 | YES | |

**HOME PHONE**

### VICT.

| | NAME (L.F.M) SEE CRIME REPORT | CITY | BUS. PHONE | RACE | SEX | D.O.B. | ADDN'L VIC./WIT. |
|---|---|---|---|---|---|---|---|

**BUS. ADDRESS**

| REPORTING OFFICER ARVAN | I.D. 625 | DIVISION GSU | REPORT DATE 12-27-01 | TIME 0730 | REPORT APPROVED | I.D. | BOOKING APPROV. |
|---|---|---|---|---|---|---|---|

001264   PD 62-94

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☐ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3298
☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☑ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

**FOR COURT USE ONLY**

F I L E D

Clerk of the Superior Court

JUN 0 8 2006

By: S. FRUTOS, Deputy

PLAINTIFF(S)/PETITIONER(S)
Ramon I. Contreras

DEFENDANT(S)/RESPONDENT(S)
Martinez, Jimmy Jr.

**CLERK'S CERTIFICATE**

CASE NUMBER
198-208

---

I certify that each of the attached documents, as listed below, is a full, true and correct copy of the original on file in my office.

Petition filed 6-4-02
Readiness hearing dated 7-10-02
Petition filed 6-24-02
Readiness hearing dated 7-10-02
Probation Officer's Social Study Report Dated 7-26-02
Disposition hearing dated 7-26-02
Annual Review dated 1-23-04

**CLERK'S CERTIFICATE**

The foregoing is a full, true and correct copy of the original on file in this office.

CLERK OF THE SUPERIOR COURT

Date: 6/8/06

by _____ , Deputy

SDSC CIV-54(Rev. 2-00)        **CLERK'S CERTIFICATE**

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

PO: Catalina Tabares                                                                **READINESS HEARING**

Petition No: JCM98208 01    JDA No: 86763    REJIS No: 20020699                    Date: July 10, 2002    Time 8:30 am

**IN THE MATTER OF:    JIMMY MARTINEZ, A MINOR**
Date of Birth: July 21, 1985
Minor's Attorney: Richard F Arroyo (San Diego Bar Association)

REFEREE: Josephine Dedina                          CLERK: Lorraine J. Wilder
                                                   REPORTER: Monique Oligny, CSR No. 10818
DEPT: 7                                            P.O. Box 128, San Diego, Ca 92112-4104

**PRESENT BEFORE THE COURT:**

DISTRICT ATTORNEY                                  COURT OFFICER: Sherry Marcue
   Renee Palermo, Deputy District Attorney
ATTORNEY FOR MINOR                                 PROBATION OFFICER:
   Richard F Arroyo, San Diego Bar Association
ALSO BEFORE THE COURT:
   The minor and the mother are present.

**THE MATTER COMES BEFORE THE COURT FOR:**

Original 602 petition filed June 4, 2002.

**THE COURT FINDS:**

**THE COURT ORDERS:**

The entire petition is Dismissed By Court With Harvey Waiver.
The minor, parent, or guardian may apply, within 10 days of service, to the Juvenile Court for a rehearing of the Referee's order.

**ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.**

DATE: July 10, 2002

                                          Josephine Dedina, Referee

Copy of Order Received By ..................................................    on Date: ...............
                              Minor's Signature

Witnessed By ..................................................
                        P.O. - Clerk

ATTEST: The foregoing is a full, true and correct copy of the original on file in this office
         Stephen Thunberg, Clerk of the Superior Court

         By ..................................................

Petition re JIMMY MARTINEZ , JDA No. B4844 1                    Page        2

COUNT 1  Said person, on or about 12/06/01, having knowledge that Andy
Moreno, had committed the crime of Assault, a felony, in violation of
PC245(a)(1), did unlawfully harbor, conceal, and aid Andy Moreno, with
intent that he might avoid and escape from arrest, trial, conviction
and punishment, in violation of Penal Code section 32, a felony.

(3)  The names and addresses of the above named person's parents
     and/or guardian or of an adult relative living within the County,
     or living nearest this Court known to me, are as follows:

```
===================================================================
      Service              Relationship
Method  Date Place         Name Address Phone
-------------------------------------------------------------------
(Mail)   JUN 2 4 2002      MOTHER
(Pers)  Juvenile Court     ALEJANDRA MARTINEZ
                           SAME AS MINOR
                           (619)593-4290
-------------------------------------------------------------------
(Mail)  JUN 2 4 2002
(Pers)  Juvenile Court     (Minor Shown Above)
-------------------------------------------------------------------
(Mail)   JUN 2 4 2002      APPOINTED          RICHARD J. ARROYO ESQ.
(Pers)  Juvenile Court     ATTORNEY
===================================================================
```

(4)  The above named person is not detained.

THEREFORE, I request that this person be declared a ward of the
Juvenile Court.

     I certify under penalty of perjury that the foregoing is true and
correct, except as to the matters which are therein stated on my
information and belief, and as to those matters I believe it to be
true.

Date:  June 24, 2002                PAUL J. PFINGST, Petitioner

                                 By _____
                                    Deputy District Attorney

RDAP25P1(20020621942089)DLBUKHDA

PO:   TABACCO     CATALINA

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN DIEGO
JUVENILE DEPARTMENT

JUL 1 0 2002          8:30 A.M.

PETITION - WARD
NOTICE OF HEARING

Hearing Date: _____
Detention: _____
Fitness: _____
Regular: _____
Judge Assignment: _____

JIMMY MARTINEZ
A.K.A. JIMMY MARTINEZ

JDA No: B4844    1
REJIS:  20020699

Age:  16   Birthdate: 07/21/1985

Petition No: M0198208

Address: 1420 OAKDALE AVENUE
EL CAJON, CA 92021
(619)593-4290

W & I SECTION 602

I, the undersigned petitioner allege:

(1)   This person comes within the provisions of Section 602 of the
Juvenile Court Law, Welfare and Institutions Code or other laws
of California.

(2)   The offenses enumerated below may result in the violation of any
probation previously granted and the imposition of any previously
unexpired term of detention.

COUNT 1: Said person, on or about 12/06/01, did assault another with a
deadly weapon and instrument and by means of force likely to produce
great bodily injury, in violation of Penal Code section 245(a)(1), a
felony. (Victim: Daniel M.)

It is further alleged that the above offense was committed for the
benefit of, or at the direction of, or in association with a criminal
street gang, with the specific intent to promote, or further, or
assist in the criminal conduct by the gang members within the meaning
of Penal Code section 186.22(b)(1).

COUNT 2: Said person, on or about 12/06/01, did unlawfully carry
concealed upon his person a dirk and dagger, in violation of Penal
Code section 12020(a), a felony.

Petition re JIMMY NMN MARTINEZ JR., JDA No. B6763 1          Page      2

(3)  The names and addresses of the above named person's parents
     and/or guardian or of an adult relative living within the County,
     or living nearest this Court known to me, are as follows:

============================================================================
        Service              Relationship
Method  Date Place           Name Address Phone
----------------------------------------------------------------------------
(Mail)    JUN 05 2002        MOTHER
(Pers)  Juvenile Court       ALEJANDRA MARTINEZ
                             SAME AS MINOR
                             (619)593-4290
----------------------------------------------------------------------------
(Mail)    JUN 05 2002
(Pers)  Juvenile Court       (Minor Shown Above)
----------------------------------------------------------------------------
(Mail)    JUN 05             APPOINTED       RICHARD L ARONS 153
(Pers)  Juvenile Court       ATTORNEY:       268 CHURCH AVENUE
                                             CHULA VISTA, CA 91910 426-0074
============================================================================

(4)  The above named person is detained.

(5)  Taken into custody at  08:20 PM June 02, 2002

THEREFORE, I request that this person be declared a ward of the
Juvenile Court.

    I certify under penalty of perjury that the foregoing is true and
correct, except as to the matters which are therein stated on my
information and belief, and as to those matters I believe it to be
true.

Date:  June 04, 2002               PAUL J. PFINGST, Petitioner

                                   By _____
                                      Deputy District Attorney


RDAP25P1(200206041631416)DLEUKHDA

Petition re JIMMY NMN MARTINEZ JR. , JDA No. B6763 1          Page        2

(3)   The names and addresses of the above named person's parents
      and/or guardian or of an adult relative living within the County,
      or living nearest this Court known to me, are as follows:

| Method | Service Date-Place | Relationship Name-Address-Phone |
|--------|--------------------|--------------------------------|
| (Mail) (Pers) | JUN 05 2002 Juvenile Court | MOTHER ALEJANDRA MARTINEZ SAME AS MINOR (619)593-4290 |
| (Mail) (Pers) | Juvenile Court | (Minor Shown Above) |
| (Mail) (Pers) | Juvenile Court | ATTORNEY |

(4)   The above named person is detained.

(5)   Taken into custody at  08:20 PM June 02, 2002

THEREFORE, I request that this person be declared a ward of the
Juvenile Court.

      I certify under penalty of perjury that the foregoing is true and
correct, except as to the matters which are therein stated on my
information and belief, and as to those matters I believe it to be
true.

Date:  June 04, 2002              PAUL J. PFINGST, Petitioner


                                  By _____
                                      Deputy District Attorney


RDAP25P1(200206041631416)DLEUKHDA

JIMMY MARTINEZ                                      07-26-02
20020699

PER ALLEGATION PC 186.22(b)(1),
GANG ALLEGATIONS:

Ct 1B                                  Dismissed

Ct 2 PC 12020(a), Possession of a      Dism w/HW
   Dirk and Dagger, Misd

Ct 3 PC 32, Aiding and Abetting        Dism w/HW
   in a Felony, Felony                 Dism w/HW

**COPARTICIPANTS' INFORMATION:**

Perez and Norton were referred to Adult Court per 707 proceedings. Moedano was committed to the Youth Correctional Center (YCC). Jessica Palmer is at 198, Andy Moreno is at 198, Zachary Paulson is in the Warrant Bank.

**OFFENSE INFORMATION:**

Source:  Law Enforcement Reports

**Petition Dated:** 6-4-02

Counts 1 through 3    Offense date: 6-2-02

On the above date at approximately 2000 hours, the minor returned home from a wedding under the influence of alcohol. He argued with his mother because he wanted his car keys to drive to another party. His mother refused to let him drive the car. The mother subsequently went to the vehicle to disconnect the battery. In so doing, the minor pushed his mother. Subsequently, the mother notified El Cajon Police Department (ECPD). El Cajon Police arrived. The minor had fled on foot. He was apprehended two blocks away and subsequently arrested. The minor submitted to a breathalyzer test with the results of .14 percent blood alcohol.

**Petition Dated:** 6-4-02

Counts 1, 1B, 2 and 3   Offense date: 12-6-01

On 12-6-01 at approximately 2020 hours, the victim, Daniel M., drove up to Washington Market at 119 W. Washington. Inside his van was his brother Angel S., and a friend, Adrian P. Victim Mendoza immediately saw and recognized Marco Moedano, AKA "Listo," a documented "El Cajon Duke" gang member. Moedano was standing in front of Papas Pizza, which is the business just east of Washington Market in a small strip mall. Victim Mendoza reported that Moedano was with another Hispanic male, later identified as Andy Moreno. Victim Mendoza reported Moedano was "mad-dogging" him as he walked into the market.

- 2 -

JIMMY  MARTINEZ                                                    07-26-02
Z0020699

Based upon various versions of eyewitness accounts, it appeared that Moedano
and Moreno advanced towards the victim's car.  There was a verbal altercation
between Moedano and victim Mendoza which led to a fistfight.  A separate
fistfight began between the victim's brother, Angel S., and Moreno.
Moedano summoned help from his friends who were across the street at a
7-Eleven store by whistling to get their attention.  Francisco Perez, AKA
"Cisco," Benjamin Norton and Jimmy Martinez responded by arming themselves
with bats, a hammer, and possibly a crowbar.  They obtained the weapons from
the trunk of the vehicle belonging to Martinez.  All three ran across the
street to fight at the Washington Market/Papa's Pizza parking lot.  Perez and
Norton are documented "Duke" gang members.

Several witnesses identified Francisco Javier Perez as the one who struck
victim Mendoza in the head with a hammer.  Perez was often described as the
"fat guy" or "heavy-set guy."  Perez was reported as having first used the
hammer to break the back windows of the victim's van, striking the victim in
the head with the hammer at least once but possibly as many as two or three
times.  Norton and Moedano were identified as the ones who hit the victim
with a bat.  During the altercation, several statements were yelled out to
the victim by Perez and his companions, identifying themselves as "Duke" gang
members.

Perez and his Moedano then ran back across the street.  Moedano then got into
Jessica Palmer's car with a weapon and fled the area.  Martinez, Norton and
Perez got into Jimmy Martinez's vehicle and fled the scene.

The El Cajon Police Department referred the matter to Probation via a paper
referral.

## VICTIM INFORMATION:

Request for information and notification of hearing was sent to victim(s):

**Petition Dated:** 6-4-02  Count 1

Name:  ALEJANDRA MARTINEZ       Responded:  [X] Yes  [ ] No
Restitution Requested:  $ none    Documentation Attached:  [ ] Yes [X] N

## Victim's Statement/Additional Information:

This officer contacted the victim's mother, Alejandra Martinez.  She stated
that her son "pushed her," however, she did not sustain any injury.
Furthermore, the only reason that she called the police was not to have her
son taken to Juvenile Hall, but rather for the police officers to "talk" to
the minor.

Petition No. ICM19070702  JDA No. 84844     REJIS 07-10-2009     07/10/2002   Time 8:30 am     JIMMY MAR...

DATE: July 10, 2002

Josephine Dedina, Referee

on Date: _____

Copy of Order Received By _____

Minor's Signature

Witnessed By _____

P.O. / Clerk

ATTEST: The foregoing is a full, true and correct copy of the original on file in this office.
Stephen Thunberg, Clerk of the Superior Court.

By: _____

PO:  HYDORN          KIMBERLY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN DIEGO
JUVENILE DEPARTMENT

JUN 1 9 2002

PETITION - WARD
NOTICE OF HEARING

Hearing Date: _____
Detention: 06/05/2002 08:30
Fitness: _____
Regular: _____
Judge Assignment: _____

JIMMY NMN MARTINEZ JR.

JDA No: B6763    1
REJIS:  20020699

Age:  16   Birthdate: 07/21/1985

Petition No: M0198208

Address  1420 OAKDALE AVENUE
         EL CAJON, CA 92021
         (619)593-4290

W & I SECTION 602

I, the undersigned petitioner allege:

(1)  This person comes within the provisions of Section 602 of the
     Juvenile Court Law, Welfare and Institutions Code or other laws
     of California.

(2)  The offenses enumerated below may result in the violation of any
     probation previously granted and the imposition of any previously
     unexpired term of detention.

COUNT 1: Said person, on or about 06/02/02, did willfully and
unlawfully use force and violence upon the person of Alejandra
Martinez, in violation of Penal Code section 242, a misdemeanor.

COUNT 2: Said person, on or about 06/02/02, was found unlawfully under
the influence of intoxicating liquor, drugs, toulene, poison, or a
combination thereof, in such a condition that he was unable to
exercise care for his safety and the safety of others, in violation of
Penal Code section 647(f), a misdemeanor.

COUNT 3: Said person, on or about 06/02/02, did willfully and
unlawfully resist, delay, and obstruct a public officer and peace
officer, in the discharge and attempt to discharge, a duty of his
office, in violation of Penal Code section 148, a misdemeanor

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

READINESS HEARING

TO: Catalina Talavera

Petition No: JCM19820602   JDA No: 16844   REJIS No: 20020699          Date: July 10, 2002   Time: 8:30 am

### IN THE MATTER OF:   JIMMY MARTINEZ, A MINOR
Date of Birth: July 21, 1985
Minor's Attorney: Richard F. Arroyo (San Diego Bar Association)

REFEREE: Josephine Dedina

DEPT: 7

CLERK: Lorraine T. Wilder
REPORTER: Monique Oligny, CSR No: 10818
P. O. Box 128, San Diego, Ca 92112-4104

### PRESENT BEFORE THE COURT:

DISTRICT ATTORNEY                                COURT OFFICER: Sherry Marcue
  Renee Palermo, Deputy District Attorney
ATTORNEY FOR MINOR                               PROBATION OFFICER:
  Richard F. Arroyo, San Diego Bar Association
ALSO BEFORE THE COURT:
  The minor and the mother are present.

### THE MATTER COMES BEFORE THE COURT FOR:

- Original 602 petition filed June 24, 2002.
- The appointment of Richard F. Arroyo as counsel for the minor is confirmed.
- The minor was informed of constitutional and statutory rights as follows:
    The right to counsel.
    The right to trial by a judge.
    The right to remain silent.
    The right to subpoena and cross-examine witnesses.
- The purposes and consequences of the proceedings were explained.
- Minor knowingly, intelligently, and voluntarily waives constitutional rights.
- All parties stipulate that the minor will be required to register as a gang member. This requirement may be revisited upon the successful completion of probation.

### THE COURT FINDS:

- Notice has been given as required by law; the minor's name and birthdate are verified and the minor's legal residence is San Diego County.
- The minor admits to Count 1, PC245(a)(1), a felony.
- There is a factual basis for the admission.
- The petition is sustained and the minor is in violation of the counts listed above, as proven beyond a reasonable doubt.
- The Court dismisses Count 1B, PC186.22(b)(1), Count 2, PC12020(a), a felony and Count 3, PC32, a felony, with a Harvey Waiver.
- The minor is advised the maximum term for Count 1 is 4 years.
- The minor is advised the overall maximum term of confinement is 4 years.
- The minor enters an Arbuckle Waiver.
- The minor waives time for disposition.

### THE COURT ORDERS:

- The matter is set for Disposition Hearing (16844) on July 26, 2002 at 8:30 am in Department 7. The minor is ordered to return.
- The minor, parent, or guardian may apply, within 10 days of service, to the Juvenile Court for a rehearing of the Referee's order.

### ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

READINESS HEARING

PO: Catalina Ldescoe

Petition No: JCM 198208 02    JDA No: 16844    REJIS No: 20020099          Date: July 10, 2002    Time: 8:30 am

### IN THE MATTER OF:    JIMMY MARTINEZ - A MINOR
Date of Birth: July 21, 1985
Minor's Attorney: Richard F. Arroyo (San Diego Bar Association)

REFEREE: Josephine Dedina                      CLERK: Lorraine T. Wilder
                                               REPORTER: Monique Oligny, CSR No. 10818
DEPT: 7                                        P. O. Box 128, San Diego, Ca 92112-4104

## PRESENT BEFORE THE COURT:

   DISTRICT ATTORNEY                           COURT OFFICER: Sherry Marcue
   Renee Palermo, Deputy District Attorney
   ATTORNEY FOR MINOR                          PROBATION OFFICER
   Richard F Arroyo, San Diego Bar Association
   ALSO BEFORE THE COURT:
   The minor and the mother are present

## THE MATTER COMES BEFORE THE COURT FOR:

   • Original 602 petition filed June 24, 2002.
   • The appointment of Richard F Arroyo as counsel for the minor is confirmed.
   • The minor was informed of constitutional and statutory rights as follows:
        The right to counsel.
        The right to trial by a judge.
        The right to remain silent.
        The right to subpoena and cross-examine witnesses.
   • The purposes and consequences of the proceedings were explained.
   • Minor knowingly, intelligently, and voluntarily waives constitutional rights.
   • All parties stipulate that the minor will be required to register as a gang member. This requirement may be revisited upon the
     successful completion of probation.

## THE COURT FINDS:

   • Notice has been given as required by law, the minor's name and birthdate are verified and the minor's legal residence is San
     Diego County.
   • The minor admits to Count 1, PC245(a)(1), a felony.
   • There is a factual basis for the admission.
   • The petition is sustained and the minor is in violation of the counts listed above, as proven beyond a reasonable doubt.
   • The Court dismisses Count 1B, PC186.22(b)(1), Count 2, PC12020(a), a felony and Count 3, PC32, a felony, with a Harvey
     Waiver.
   • The minor is advised the maximum term for Count 1 is 4 years.
   • The minor is advised the overall maximum term of confinement is 4 years.
   • The minor enters an Arbuckle Waiver.
   • The minor waives time for disposition.

## THE COURT ORDERS:

   • The matter is set for Disposition Hearing (D4844) on July 26, 2002 at 8:30 am in Department 7. The minor is ordered to return
   • The minor, parent, or guardian may apply, within 10 days of service, to the Juvenile Court for a rehearing of the Referee's order.

## ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.

SAN DIEGO COUNTY PROBATION DEPARTMENT
JUVENILE FIELD SERVICES
PROBATION OFFICER'S SOCIAL STUDY

| | | |
|---|---|---|
| **IN THE MATTER OF:** JIMMY MARTINEZ | **HEARING DATE/TIME:** 07-26-02 @ 08:30 | **DEPT. & JUDGE:** 007/CHARLES GILL |
| **TRUE NAME:** JIMMY MARTINEZ | **JDA NO.:** B4844 & B6763 | **REJIS NO.:** 20020699 |
| **AKA:** JIMMY NMN MARTINEZ JR. MARTINEZ JIMMY | **PETITION NO.:** M0198208 | **ATTORNEY:** (BA) RICHARD ARROYO APPT. X RET. |
| **COURT STATUS:** ALLEGED WARD | | |
| **COUNTY OF LEGAL RESIDENCE:** SAN DIEGO | **PROBATION OFFICER:** CATALINA TABACCO | **PO TEL. NO.:** (858)694-4282 |
| **MINOR'S ADDRESS:** 1420 OAKDALE AVENUE EL CAJON, CA 92021-0000 | **TEL. NO.:** (619)593-4290 | **BIRTHPLACE/CITIZENSHIP:** EL CENTRO, CA/CIT |
| **MINOR'S CURRENT LOCATION:** HS | **SOC. SEC. NO.:** 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 | **D/L #:** D3474809 CA **INS #:** none |
| | **SCHOOL:** GRANITE HILLS HIGH SCHOOL | **GRADE:** 11 |

| DOB: 07-21-85 | AGE: 17 | RACE: 200 | SEX: M | HT: .601 | WT: 190 | EYES: BRN | HAIR: BLK |
|---|---|---|---|---|---|---|---|

| **FATHER'S NAME:** MARTINEZ, JIMMY JOE | **MOTHER'S NAME:** CARDENAS-MARTINEZ, ALEJANDRA | **JUVENILE HALL DATES FOR THE INSTANT OFFENSE:** BOOKED: 6-2-02 RELEASED: 6-11-02 |
|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| **MAXIMUM AGGREGATE CONFINEMENT TIME:** | 4 YEARS | MONTHS | | DAYS | | TBD |
| **TOTAL CUSTODY CREDITS:** | | | | 12 DAYS | | TBD |
| **TOTAL CONFINEMENT TIME AVAILABLE:** | | | | 1448 DAYS | | TBD |

[X] ATTACHMENTS  [ ] NO ATTACHMENTS  [ ] REPORT(S) NOT RECEIVED BY P.O.

DATE MINOR WAS FIRST REMOVED FROM HOME BY THE COURT RELATIVE TO THIS PETITION: 6-2-02

| **ALLEGATIONS:** | **FINDINGS:** |
|---|---|
| Ct 1 PC 242, Battery, Misd | Dism w/HW |
| Ct 2 PC 647(f), Under Influence of Alcohol, Misd | Dism w/HW |
| Ct 3 PC 148, Resist Arrest, Misd | Dism w/HW |

**2nd Petition:**

| | |
|---|---|
| Ct 1 PC 245(a), Assault w/Deadly Weapon, Felony | True finding |

**RECOMMENDATION:** WIC 602 ward, Youth Correctional Center (YCC) 270

JIMMY MARTINEZ                                                    07-26-02
20020699

**Petition Dated**: 6-24-02

Counts 1, 2, 3

Name: DANIEL M.                            Responded:   [x] Yes  [ ] No
Restitution Requested: $18,797.90  Documentation Attached:  [x] Yes [ ] No

**Victim's Statement/Additional Information**:

The victim has been contacted via other Probation Officers and the District Attorney's victim/witness program.  This officer attempted to contact the victim via information provided by the District Attorney, however, the phone number had been disconnected.  Subsequently, through further investigation, this officer contacted the victim at his work site in El Cajon.

The victim verified the documents that he has sent.  He continues to manifest severe headaches.  He has been seeing an uncle of his, a doctor in Tijuana, who has administered 1500 Tylenol 3, four times a day.  The victim stated that even though he takes all the medication, his head still hurts.

The victim stated that many years ago, he may have "made a mistake," in that he was wearing "baggie pants."  However, that was seven years ago and he has since changed his life.

The victim stated also that he had to move from his residence because of fear of retaliation.  Also, he knows some females who know members of the "El Cajon Dukes."  The females told the victim that members of the "El Cajon Dukes are threatening to kill him."  The victim stated he is very concerned because he wants to protect his family.

The victim added that after the incident happened, he fixed the windows of the van, however, approximately two weeks later, the windows were again broken.  He suspects that this was accomplished by the "El Cajon Dukes."

**DELINQUENT HISTORY**:

Source:  Computer checks, Probation records.

[ ] No record found.

| Offense Date | Charges | Disposition | Max Term Confinement | Credits |
|---|---|---|---|---|
| 12-6-01 | Ct 1 PC 245(a)(1) per PC 186.22(b)1 Ct 2 VC 12020(a) Ct 3 PC 32 INSTANT OFFENSE | TF PC 245(a)(1) Over 186.22(b)1 Dism, Cts 2 & 3 Dism | 4 yrs | 12 days |

-4-

JIMMY MARTINEZ                                          07-26-02
20020699

2-26-02    PC 496(a)              Referred, No •
                                  Formal Action
                                  Taken

The above matter was attached to the data of the offense of 12-6-01. On the
above date at approximately 1800 hours, at 600 N. 2nd Avenue, El Cajon, the
minor was a passenger along with Zachary Paulson and Andy Moreno in a stolen
1987 red Corvette.

6-2-02     PC 242           Pet. Filed,        N/A           12 days
           PC 647(f)        Dism w/HW
           PC 148
           INSTANT OFFENSE

**TRAFFIC COURT:**

[x] No record found.


**STATEMENT OF MINOR:**

Date and location of interview: 6-10-02 at Juvenile Hall,
                                7-10-02 at Juvenile Probation Center

Subsequent to admonishment, the minor agreed to the interview. As to the
battery on his mother, the minor indicated that he had gone to a wedding and
drank several beers. He "recalls" in part that he came home and wanted to
drive the car to go to another party. He became angry at his mother when she
attempted to disconnect the battery in his car. He acknowledged that he
pushed his mother. The minor is remorseful. The minor stated that he has
never struck his mother before.

On 6-10-02, the minor was questioned about some alleged "pending referrals."
The minor stated that he drove his vehicle along with Norton to school that
day. The two left in the vehicle and eventually picked up Andy Moreno. They
drove to the 7-Eleven parking lot to meet Moedano. Jimmy stated that he
stopped at Norton's house for a period of time. When they left Norton's
house, Norton carried out some baseball bats and put them in his vehicle.

After arriving at the 7-Eleven store, Martinez stated that Moedano and Moreno
went across the street to meet a girl. Martinez stated that he remained in
the 7-Eleven. He heard someone yell "fight!" The minor observed Andy
"fighting two people and some others using bats." Jimmy stated that he
"didn't know" what they were going to do with the bats. Jimmy stated that
after the fight, a couple of the youths got into his car and he drove them
home. The minor denied striking the victim.

Jimmy claims that after the incident, everybody went to their respective
homes. He did not talk about the incident. The minor stated that he had
"heard" that the victim was a gang member of "Orphans." The minor denied any
gang affiliation.

- 5 -

JIMMY MARTINEZ                                                    07-26-02
20020699

As to a disposition, the minor stated that he is prepared to face the consequences and comply with the orders of the Court. He added that he "made a wrong choice" by being "at the wrong place at the wrong time." The minor acknowledged that if he had not driven his vehicle with the other youths, the incident would not have happened.

The minor noted that although the offense is very serious, he would prefer not to have custody time. However, if the Court does impose custody time, he will take the consequences.

**STATEMENT OF PARENT:**

Date and location of interview: 6-4, 6-5 and 7-10-02 at the Juvenile Probation Center; also several phone calls with the mother

The undersigned spoke to the minor's mother, Alejandra Martinez, for the purpose of this report. She expressed her "surprise" that her son was actually taken to Juvenile Hall for "pushing" her. The mother tended to minimize or deny the battery. The mother did state she has been aware that her son has been drinking alcohol and possibly smoking marijuana.

The mother insisted that she was "shocked" to hear that her son was implicated in "gang activity." The mother stated that upon reading the report, she became very "depressed." The mother stated that she has known most of his friends, and the minor did not appear to have any gang friends.

Ms. Martinez feels that her son has been forthright about his role in the assault with a deadly weapon. The mother agreed that all of the other suspects should be held equally accountable.

With reference to disposition, the minor's mother stated that she feels "saddened" at the thought that her son may be in custody as a result of the offense. The mother wanted to know if there was a possibility, if he had to be in custody, to go to a "Christian school."

**MINOR'S PERSONAL HISTORY:**

**School:**

Source:   [x] School      [ ] Requested but not received

Current School: GRANITE HILLS HS         Grade: 11

[x] Regular         [ ] Continuation    [ ] Home Study    [ ] Court School

[ ] Special Ed.     [ ] Individual Education Plan/Date:

[ ] Expelled        [ ] Suspended

-6-

JIMMY MARTINEZ
20020659

07-26-02

**Most Recent Grades**: 6-20-02

| SUBJECT | ACADEMIC GRADE | CITIZENSHIP |
|---|---|---|
| English | D | Satisfactory |
| Basic Geometry | B | Outstanding |
| Weight Training | B | " |
| Chemistry | C | " |
| History | B | " |
| Life Management Skills | D | Satisfactory |

Attendance: [x] Some Tardies    [x] Some Truancy

Comments:

Granite Hills reports that the minor's rank in class is 516 of 670. The minor has had some absences and tardies.

Granite Hills submitted a copy of a letter, dated 12-14-01, in which Jimmy was placed on a contract due to his involvement in the activities of 12-6-01. The report indicated that, "Jimmy is now documented as a gang member by El Cajon Police. He has previous referral for gang behavior. He agrees that he will not be involved in any further behavior that is considered gang related." The minor signed the contract.

On 6-28-02, this officer received a letter from Teresa Kemper, Assistant Principal, who stated that since Jimmy signed the contract in December, "...He has not had anymore disciplinary referrals for any gang-related behavior."

**Substance Abuse History**:

Source: [x] Minor [ ] Parent/Caretaker

| SUBSTANCE | USAGE | | | | |
|---|---|---|---|---|---|
| | Daily | Weekly | Monthly | Rarely | None |
| Alcohol | | | X | | |
| Marijuana | | | X | | |
| Methamphetamine | | | X | | |
| PCP | | | | | X |
| Other Stimulants | | | | | |
| Cocaine | | | | | |
| Heroin | | | | | X |

JIMMY MARTINEZ                                          07-26-02
20020699

| Other Depressants/ Opiates | | | • | | X |
|---|---|---|---|---|---|
| Hallucinogens | | | | | X |
| Inhalants | | | | | X |

Comments:

The minor stated that he first began drinking beer and smoking marijuana about one year. He estimates that he has consumed beer and marijuana once a month "or less."

**Substance Abuse Simple Screening Instrument (SSI):**

[ ] Yes   [ ] No     Date: 6-10-02

Score:   [ ] None to Low          [x] Minimal          [ ] Moderate to High

**Gangs/Tagger Affiliation:**

[x]  Minor denies/None.
[x]  Associates with gang/crew members. Source:
     Moniker:      Tattoos; "SD" lower right leg

Comments:

The police report and school information report that the minor is a documented "El Cajon Dukes" gang member. This officer telephoned Detective Arvan, El Cajon Juvenile Gangs, who stated to the Probation Officer that DDA Dino Paraskevoipous stated that Jimmy is "just on the periphery" of being a gang member.

**Physical Health/Mental Health:**

The minor has had asthma. In his freshman year, he was on a track team and jumped hurdles, fell and broke his wrist. Also, the mother stated that she had taken the minor for examinations because there was a concern about a tumor that the minor had.

**Psychological Evaluation:**   [ ] Yes   [x] No

6

JIMMY MARTINEZ                                                     07-26-02
20020699

## Counseling History:

Source: minor and mother

Comments:

The minor stated that he signed the behavioral contract at school. He was counseled by school officials. Also, because of a fight at school, he took an anger management class.

## HEALTH AND HUMAN SERVICES/CHILD WELFARE HISTORY:

[x] No record found.

## Abuse History:

Source: minor and parent

[x] None   [ ] Sexual   [ ] Physical   [ ] Emotional

Comments:

The minor claims he has never been a victim of sexual, emotional or physical abuse.

**Previous Out of Home Placements:** [ ] Yes   [x] No

**Employment History:**   [x] Yes  [ ] No

Source: [x] Minor/mother [ ] Employer [ ] Other:

[ ] Current Occupation:   [x] Past Occupation: cashier at Taco Bell
Salary: $40 to 50 per week   Hours per week: varied
Length of employment: 1 year

## Juvenile Hall Adjustment:

The minor was detained in Unit 1000. Juvenile Hall staff reported that the minor seemed to be very motivated educationally. He stated that his favorite subject was chemistry. He wants to go to college to get a BS degree in science. The minor told staff that he does drink alcohol socially. The minor admitted that in the past, he had associated with gang members, however, does not do so anymore.

Juvenile Hall staff, in the closing summary, noted, "...Minor behaves well in the unit. He is not violent, getting along well and going to school regularly." He attended Spectrum group's anti-drug programs and unit's programs."

9

JIMMY MARTINEZ                                                          07-26-02
26020699

**THE FAMILY:**

The minor is the youngest of three children born to the parents.  The father reportedly is an American Indian and resides in Arizona.  The mother stated that she separated from the father approximately three years ago, because he was addicted to gambling.

The mother has a son and a daughter from another relationship.  The minor's half sister, Jennifer, brother, Caleb, and sister, Kendra, reside with the mother in a home that they are purchasing in El Cajon.  The older sister works in data entry; the two youngest are students.  The mother works for Frazee Financial Analysis, Monday through Friday, 8:00 to 5:00.

The family has resided in El Centro, Tucson, Arizona and El Cajon.  The mother stated that when she was married to the minor's father, he was a Pastor.  The parents operated a Christian school; all of the children participated.  Since the separation, there has been no ongoing religious affiliation.

**Law Enforcement History:**

Source:  Cal ID, local records.

[x] No record found.

**SCREENING INFORMATION:**

The screening committee, on 7-18-02, recommended Youth Correctional Center (YCC) 270.  They determined that the minor is gang entrenched and substance abusing.  The minor was involved in a potential lethal act of violence and is at risk for further violence.  To the minor's credit, he has limited criminal history and has shown improvement in school.  YCC can provide accountability, sobriety, independent living skills and academic remediation.

**ADDITIONAL INFORMATION:**

The Court is respectfully referred to the attached letter submitted by the minor and received by the Probation Officer 7-22-02.

**EVALUATION:**

Jimmy Martinez Jr., age 17 years, is appearing before the Court subsequent to receiving a true finding on a felony charge of PC 245(a)(1), assault with a deadly weapon, 1B allegation, PC 186.22(b)(1), dismissed, as well as PC 12002(a) and PC 32.  The initial petition filed alleging PC 245, 647(f), PC 148, was also dismissed with a Harvey Waiver.  The minor associated with the "El Cajon Dukes" gang, drove other "El Cajon Dukes" gang members to the scene of the crime and allowed other gang members to place weapons, such as bats, in the vehicle.

10

JIMMY MARTINEZ                                                          07-26-02
20020699

The assault on the victim was very serious. The victim still complains of headaches and threats being made to him by gang members.

In considering the minor's suitability for probation, the undersigned evaluated his behavior at home, school adjustment, history of drugs and the seriousness of the offense.

Other than the battery on his mother and drunk in public, this is the minor's first referral to the Juvenile Court and the Probation Department. He has no prior Traffic Court record. The undersigned evaluated the minor's gang association and his minimizing his behavior in the assault on the victim. The minor appears to have been heavily influenced by his peers. The minor has been attending school regularly. The school also reports defiance and a fight. Although Jimmy is "on the periphery of gang documentation" and did actually participate in the assault, the minor's involvement in the incident cannot be denied.

The minor would benefit from a custody program that would hold him accountable and assist him with acknowledging the serious impact his behavior had on the victim.

It is recommended that the minor be adjudged a WIC 602 ward and committed to the Youth Correctional Center for 270 days. It is hoped that Jimmy will utilize his time in custody to graduate, attend a substance abuse treatment program, and reflect on the seriousness of the offense.

The following recommendations are respectfully submitted for the Court's consideration.

JIMMY MARTINEZ                                                              07-36-02
200-0699

**RECOMMENDATION:**  See attached

                          Respectfully Submitted,

                          ALAN M. CROGAN
                          Chief Probation Officer
                          By:

                          CATALINA TABACCO
                          Senior Probation Officer
                          (858) 694-4282

Approved

              LETICIA SANDOVAL Supervisor
              (858) 694-4330

CT:bkv/9-22-02

- 12 -

JIMMY MARTINEZ                                                    07-26-02
20020699

## RECOMMENDATIONS:

1.  **(DW020)**   Said person is adjudged a ward pursuant to WIC 602.

2.  **(DW080)**   CARE, CUSTODY, AND CONTROL OF MINOR IS TO BE UNDER THE
                  SUPERVISION OF THE PROBATION OFFICER.

3.  **(PL055)**   Continuance in the home is contrary to the child's welfare.
                  Reasonable efforts have been made and will continue to be
                  made to prevent or eliminate the need for removal of the
                  minor from his/her home and make it possible for the child
                  to return to his/her home.

4.  **(TF010)**   Notice has been given as required by law; the minor's name
                  and birth date are verified and the minor's legal residence
                  is San Diego County.

5.  **(PL175)**   MINOR IS COMMITTED TO THE YOUTH CORRECTIONAL CENTER FOR A
                  PERIOD NOT TO EXCEED 270 DAYS.

6.  **(PL190)**   UPON COMPLETION OF THE COMMITMENT THE MINOR IS PLACED WITH
                  HIS MOTHER, ALEJANDRA MARTINEZ, 1420 OAKDALE, EL CAJON, CA
                  92021.

7.  **(DT140)**   Detained in Juvenile Hall.

8.  **(GC160)**   Minor shall report to the Probation Officer within 30 days
                  from disposition or release from placement or commitment to
                  arrange compliance of conditions of probation.  Minor shall
                  also report to any future court hearing as directed by the
                  Probation Officer.

9.  **(GC165)**   Minor shall report to the Probation Officer at such times
                  and places as directed.

10. **(GC175)**   Minor shall follow the rules and instructions of the
                  Probation Officer; report any law enforcement contacts to
                  your Probation Officer within three days.

11. **(GC190)**   Minor shall obey all Federal, State, County, and City laws.

12. **(GC140)**   Minor shall not leave the County of San Diego without the
                  permission of the Probation Officer.

13. **(GC200)**   Minor shall follow the rules and instructions of the person
                  or persons with whom you are ordered placed by the Court.
                  You are not to leave your court-ordered placement without
                  your parent or guardian's permission.

14. **(GC210)**   Minor shall report any change of address or school
                  attendance to your Probation Officer within three days

11

JIMMY MARTINEZ
20020699

07 26 03

| | | |
|---|---|---|
| 15 | (GC216) | Minor shall attend school unless officially excused from school attendance; obey the rules and conditions of the school, maintain passing grades and satisfactory citizenship. Minor shall show proof of attendance or other school records whenever requested by the Probation Officer. |
| 16 | (CN075) | The minor's parent(s) are ordered to participate in their child's school program as required by the rules of the minor's school. |
| 17 | (GC130) | Minor shall be at his/her legal residence between the hours of 6:00 p.m. and 6:00 a.m. unless in the company of his/her parent/legal guardian or adult person having legal care or custody of the minor, subject to modification at the Probation Officer's discretion. |
| 18 | (R8460) | The minor and his/her parent(s)/guardian(s) are jointly and severally responsible for the payment of restitution, fines or penalty assessments. |
| 19 | (R8080) | Minor shall pay a fine in the amount of $100 including penalty assessment pursuant to WIC 730.5 at $25 per month, commencing 30 days after release from custody, as directed by the Probation Officer. |
| 20 | (R8155) | Minor shall pay a restitution fine pursuant to WIC 730.6 in the amount of $100, to be paid in full prior to the completion of wardship. |
| 21 | (R8470) | The minor, and his/her companion(s) are jointly, and severally responsible for the payment of restitution to the victim(s). |
| 22 | (R8325) | The total restitution for this petition is determined to be $18,609.98. The minor shall pay restitution in the amount of $50 per month commencing 30 days after release from custody as directed by the Probation Officer. Restitution to be disbursed to victim(s). |
| 23 | (R8125) | Probation Officer has discretion to modify the restitution payment schedule without further order of the Court. |
| 24 | (CN065) | The minor's parent(s), or guardian(s), shall complete a parenting class as directed by the Probation Officer, and provide proof as ordered. |
| 25 | (CN080) | The minor and the minor's parent or guardian shall participate in a counseling or education program pursuant to WIC 729.2 as directed by the Probation Officer. |

14

JIMMY MARTINEZ                                                                    07-26-03
20020699

26.  (CN010)     The minor and parent shall participate in a counseling or
                 treatment program pursuant to WIC 727(c) as directed by the
                 Probation Officer.  Therapist is to provide diagnostic and
                 progress reports to the Probation Officer whenever
                 requested.

27.  (CN020)     Minor shall attend Alcoholics Anonymous as directed by the
                 Probation Officer and provide proof as ordered.

28.  (CN030)     Minor shall attend Narcotics Anonymous as directed by the
                 Probation Officer and provide proof as ordered.

29.  (CN040)     Minor shall complete an Assaultive Behavior Class as
                 directed by the Probation Officer and provide proof as
                 ordered.

30.  (CN055)     Minor shall complete a anger management and gang prevention
                 class as directed by the Probation Officer and provide proof
                 as ordered.

31.  (CN035)     The minor shall participate in a substance abuse treatment
                 program as directed by the Probation Officer.  The minor's
                 parent(s), or guardian(s), shall participate in a treatment
                 program orientation and/or counseling and/or parent program
                 as directed by the treatment provider.

32.  (GC100)     Minor shall not use or possess alcohol or controlled
                 substances without a valid prescription and shall submit to
                 testing for the detection of alcohol or controlled
                 substances whenever directed by any law enforcement or
                 Probation Officer.

33.  (GC070)     Minor shall submit his/her person, property, vehicle, and
                 any property under his/her immediate custody or control to
                 search at any time, with or without probable cause, with or
                 without a search warrant by any law enforcement officers or
                 peace officers, Probation Officers, school officials or
                 officers, and any other state security officers or agents
                 engaged in the lawful performance of their duties.

34.  (GC075)     The contraband seized by the Probation Department shall be
                 either destroyed or retained by the Probation Department for
                 educational purposes, at their discretion.

35.  (GC015)     Minor shall not associate with, contact, annoy, molest, or
                 be in the company of Francisco Javier Perez, Jessica
                 Palomar, Marco Antonio Moedano, Andy Moreno, or any other
                 person designated by the Probation Officer.

JIMMY MARTINEZ                                                    07-26-02
20020699

36.   (GC020)    Minor shall not be within one block of 100 W. Washington, El
                 Cajon, CA.

37.   (GC040)    Minor shall have no contact direct or indirect with any
                 victim/witness(es)/co-offender in this matter or any of
                 their family members.

38.   (GC170)    Minor shall not be on any school grounds unless an enrolled
                 student and it is during regular school hours unless
                 authorized by the Probation Officer.

39.   (GC180)    Minor shall not be in any privately owned vehicle with more
                 than one person under the age of 18 unless accompanied by a
                 parent or legal guardian or with permission of the Probation
                 Officer.

40.   (GC220)    Minor is not to appear in Court or any courthouse unless you
                 are a party in the proceedings.

41.   (GC230)    Minor is not to be an occupant of any vehicle that you know,
                 or should have known, was stolen.

42.   (GC240)    Minor is not to enter Mexico unless in the immediate custody
                 and control of the parent or legal guardian and with prior
                 Probation Officer permission.

43.   (GC080)    Minor shall not use, possess, transport, sell, or have in or
                 under his/her control any firearm, replica, ammunition, or
                 other weapon, including a knife, any explosive or any item
                 intended for use as a weapon, including hunting rifles or
                 shotguns.

44.   (GC065)    Minor shall not associate with or be in the company of
                 "El Cajon Dukes," "Orphans" or any gang members and wear any
                 item of clothing such as a hat, bandanna, badge, logo,
                 jewelry or possess any gang paraphernalia including photos
                 or graffiti associated with the above named gang.

45.   (GC120)    Minor shall not be in possession of any beeper or paging
                 device except in the course of lawful employment.

46.   (GC355)    Minor shall register pursuant to PC 186.30(a), with the
                 Chief of Police of the city in which he or she resides, or
                 the Sheriff of the county if he or she resides in an
                 unincorporated area, within 10 days of release of custody,
                 10 days after disposition or within 10 days of his or her
                 arrival in any city, county, or city and county to reside
                 there, whichever occurs first.

JIMMY MARTINEZ                                                    07-26-02
20020699

47   (DL010       The Court finds a vehicle was involved in or was
     and          incidental to the offense; the Court recommends
     DL020) 4     that the minor's driving privilege be suspended for one year
                  pursuant to CVC 13202(a).

48   (DL030)      Certified abstract to issue forthwith to the Department of
                  Motor Vehicles.

49   (DL040)      Privilege shall not be reinstated until the minor gives
                  proof of ability to respond in damages as defined in
                  VC 16430.

50   (DL050)      Minor shall surrender any driver's license in his possession
                  to the Court forthwith.

51   (DL140)      Minor shall not operate a motor vehicle unless properly
                  licensed and insured.

52   (DL150)      Minor shall not drive with any measurable amount of alcohol
                  or any controlled substance in his system.

53   (DL160)      Minor shall submit to testing for the detection of blood-
                  alcohol or controlled substance whenever requested by any
                  law enforcement or Probation Officer as a result of a
                  traffic stop.

54   (Rev         Annual review hearing is set for 7-25-03.
     scr) 9

55   (Rev         15-day review hearing is set for 8-9-02.
     scr) 12

56   (GC360)      The minor's parent(s), or guardian(s), shall ensure the
                  minor follows all conditions of probation, and rules and
                  instructions of the Probation Officer.  The parent(s) shall
                  report any probation violations or law enforcement contacts
                  made by the minor to the Probation Officer within three (3)
                  days.

57   (Scr) 11     All prior orders not in conflict remain in full force and
                  effect.

17

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

DISPOSITION HEARING

PO: Catalina Talavera

Petition No: JCM198200302   JDA No: 40848   REJIS No: 20020699

Date: July 26, 2002    Time: 8:30 am

IN THE MATTER OF:   JIMMY MARTINEZ, A MINOR
Date of Birth: July 21, 1985
Minor's Attorney: Richard F. Arroyo (San Diego Bar Association)

JUDGE: Charles R. Gill

CLERK: Lorraine J. Wilder
REPORTER: Monique Oligny, CSR No. 40848
P. O. Box 128, San Diego, Ca 92112-4104

DEPT:

### PRESENT BEFORE THE COURT:

DISTRICT ATTORNEY                                      COURT OFFICER  Sherry Manine
Dino J. Paraskevopoulos, Deputy District Attorney
ATTORNEY FOR MINOR                                     PROBATION OFFICER
Richard F Arroyo, San Diego Bar Association
ALSO BEFORE THE COURT:
The minor, the mother, brother and family friend are present.

### THE MATTER COMES BEFORE THE COURT FOR:

- Original 602 petition filed June 24, 2002.

### THE COURT FINDS:

- The Court has read and considered the report of the Probation Officer dated July 26, 2002 and it is admitted into evidence by reference.
- Notice has been given as required by law; the minor's name and birthdate are verified and the minor's legal residence is SAN DIEGO.
- Continuance in the home is contrary to the child's welfare. Reasonable efforts have been made and will continue to be made to prevent or eliminate the need for removal of the child from his home and make it possible for the child to return home.
- Counsel has advised the minor of all terms and conditions of Probation; the Court orders the minor to follow said terms and conditions. The minor agrees to follow all terms and conditions of probation.

### THE COURT ORDERS:

- Said person is adjudged a ward pursuant to WIC 602.
- CARE, CUSTODY, AND CONTROL OF THE MINOR IS TO BE UNDER THE SUPERVISION OF THE PROBATION OFFICER.
- The minor is committed to Breaking Cycles for a period not to exceed 240 days. Drug down.
- Upon completion of the commitment the minor is placed with Mother, Alejandra Martinez, 1420 Oakdale Avenue, El Cajon, Ca 92021.
- The minor is detained in Juvenile Hall pending commitment.
- The minor shall report to the Probation Officer within 30 days of disposition or release from placement or commitment to arrange or complete compliance with the conditions of probation. The minor shall also report to any future court hearing as directed by the Probation Officer.
- The minor shall report to the Probation Officer at such times and places as directed.
- The minor shall follow the rules and instructions of the Probation Officer, and report all law enforcement contacts to the Probation Officer within three days.
- The minor shall obey all Federal, State, County and City laws.
- The minor shall not leave the County of San Diego without permission of the Probation Officer.
- The minor shall follow the rules and instructions of the person or persons with whom s/he is ordered placed by the Court. The minor shall obey the Court ordered placement without permission of a parent or guardian.
- The minor shall report any change of address or school attendance to the Probation Officer within three days.
- The minor shall attend school unless officially excused from school attendance, obey the rules and conditions of the school, and maintain passing grades and satisfactory citizenship. The minor shall show proof of attendance or other school records whenever requested by the Probation Officer.
- The minor's parent(s) are ordered to participate in their child's school program as required by the rules of the minor's school.
- The minor shall be at his/her legal residence between the hours of 6:00 pm and 6:00 am unless in the company of his/her parent, legal guardian, or other adult person having legal care or custody of the minor, subject to modification at the Probation Officer's discretion.

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

**ANNUAL REVIEW HEARING**

P.O. Lynda Hudson

Court No. JCM196205 02    DA No. B4644    Probation No. 20120699    Date: January 24, 2004    Time: 8:30 am

### IN THE MATTER OF:    JIMMY MARTINEZ
Date of Birth: July 31, 1984
Minor's Attorney: Richard F Arroyo (San Diego Bar Association)

JUDGE: Theodore Weathers

DEPT: 2

CLERK: Gloria Carrillo
REPORTER: Rita Bowen CSR No. 4313
P. O. Box 128, San Diego, Ca 92112-4104

## PRESENT BEFORE THE COURT:

DISTRICT ATTORNEY
  Gareth Randall, Deputy District Attorney
ATTORNEY FOR MINOR
  Richard F Arroyo, San Diego Bar Association
ALSO BEFORE THE COURT
  The mother is present
  The minor's presence is waived

COURT OFFICER: David Anderson

PROBATION OFFICER

## THE MATTER COMES BEFORE THE COURT FOR:

* Original 602 petition filed June 24, 2002

## THE COURT FINDS:

* The Court has read and considered the report of the Probation Officer dated January 24, 2004 and it is admitted into evidence by reference
* The minor has successfully complied with his/her conditions of probation

## THE COURT ORDERS:

* The entire petition is Dismissed By Court In The Interest Of Justice
* THE COURT DECLINES TO SIGN THE JV90 AT THIS TIME WITHOUT PREJUDICE
* MINOR IS DECEASED
* Jurisdiction is terminated

## ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.

Printed No... 02... JID... B041... REFIS No... 2009... Date... Time... ... B041 MARTINEZ Page 2

- The minor and his/her parent(s)/guardian(s) are presumed jointly and severally responsible for the payment of restitution, fines, penalty assessments.
- The minor shall pay a fine in the amount of $100.00 pursuant to WIC 730.5, stayed pending further review.
- The minor shall pay a restitution fine pursuant to WIC 730.6 in the amount of $100.00, to be paid in full prior to completion of wardship.
- The minor and co-minor(s) are jointly and severally responsible for the payment of restitution to the victim(s).
- The total restitution for this petition is determined to be $18,789.00. The minor shall pay restitution in the amount of $50.00 per month commencing 30 days after release from custody, as directed by the Probation Officer. Restitution is to be disbursed to the victim(s). May be modified at a future court hearing.
- The Probation Officer, in his discretion to modify the restitution payment without further order of the court.
- The minor's parent or guardian shall complete a parenting class as directed by the probation officer and provide proof as ordered.
- The minor and the minor's parent or guardian shall participate in a program of counseling or education as directed by the Probation Officer pursuant to WIC 729.2. The therapist is to provide diagnostic and progress reports to the Probation Officer whenever requested.
- The minor and parent shall participate in a program of counseling or treatment as directed by the Probation Officer pursuant to WIC 727.04. The therapist is to provide diagnostic and progress reports to the Probation Officer whenever requested.
- The minor shall attend Alcoholics Anonymous as directed by the Probation Officer and provide proof as ordered.
- The minor shall attend Narcotics Anonymous as directed by the Probation Officer and provide proof as ordered.
- Said person shall complete an Anger Management and Gang Prevention class as directed by the Probation Officer and provide proof as ordered.
- The minor shall participate in a substance abuse treatment and testing program as directed by the Probation Officer. The minor's parent(s)(or guardian(s)) shall participate in a treatment program orientation and/or counseling and/or parent programs as directed by the treatment provider.
- The minor shall not use or possess alcohol or controlled substances without a valid prescription and shall submit to testing for the detection of alcohol or controlled substances whenever directed to do so by any law enforcement or probation officer.
- The minor shall submit his/her person, property, or vehicle, and any property under his/her immediate custody or control to search at any time, with or without probable cause, with or without a search warrant, by any law enforcement officer or peace officer, probation officer, school officials or officers, and any other state security officers or agents engaged in the lawful performance of their duties.
- The contraband seized by the Probation Department shall be either destroyed or retained by the Probation Department for educational purposes, at their discretion.
- The minor shall not associate with, contact, annoy, molest or be in the company of Francisco Javier Perez, Jessica Palomar, Marco Antonio Moctamo, Andy Moreno, or any other person designated by the Probation Officer.
- Minor shall not be within one block of 100 W. Washington, El Cajon, CA.
- The minor shall have no direct or indirect contact with any victim(s), witness(es) or co-offender(s) in this matter, or any of their family members.
- The minor shall not be on any school grounds unless an enrolled student and during regular school hours, unless so authorized by the Probation Officer.
- Minor shall not be in any privately owned vehicle with more than one person under the age of 18 unless accompanied by a parent or legal guardian, or with permission of the Probation Officer.
- The minor is not to appear in Court or at any courthouse unless a party or witness in the proceedings, or with permission of the Probation Officer.
- The minor is not to be an occupant of any vehicle that he/she knew or should have known was stolen.
- The minor is not to enter Mexico unless in the immediate custody and control of a parent or legal guardian and with prior permission from the Probation Officer.
- The minor shall not have, possess, transport, sell or have in or under his/her control any firearm, replica, ammunition or other weapon, including a knife, any explosive, or any item intended for use as a weapon, including hunting rifles or shotguns.
- The minor shall not associate with or be in the company of El Cajon Dukes, Orphans gang members and further, shall not wear any gang related item of clothing such as a hat, bandanna, badge, logo, jewelry, or possess any gang paraphernalia including photos or graffiti associated with the above named gang.
- The minor shall not be in possession of any beeper or paging device except in the course of lawful employment.
- The child shall register, pursuant to PC 186.30(a), with the Chief of Police of the city in which he or she resides, or the Sheriff of the county if he or she resides in an unincorporated area, within 10 days of release from custody, 10 days after disposition or within 10 days of his or her arrival in any city or county, whichever occurs first.
- The Court recommends that the minor's privilege to drive be suspended for a period of one year pursuant to CVC 13202(a).
- The Court finds a motor vehicle was involved in or incidental to the commission of the offense.
- A certified abstract is to issue forthwith to the Department of Motor Vehicles.
- The privilege shall not be reinstated until the minor provides proof of ability to respond in damages as defined in VC 16430.
- The minor shall surrender any driver's license in his possession to the Court forthwith.
- The minor shall not operate a motor vehicle unless properly licensed and insured.
- The minor shall not drive with any measurable amount of alcohol or any controlled substance in his/her system.
- The minor shall submit to testing for the detection of blood alcohol or controlled substances whenever requested by any law enforcement or Probation officer as a result of a traffic stop.
- The minor's parent(s) or guardian(s) shall ensure the minor follows all conditions of probation, rules and instructions of the Probation Officer. The parent(s) shall report any probation violations or law enforcement contacts made with the minor to the Probation Officer within 3 days.
- The matter is set for Review Hearing (B484) on September 9, 2002 at 8:30 a.m. in Department 7. The minor is ordered.
- The matter is set for Annual Review Hearing (B484) on July 25, 2003 at 8:30 a.m. in Department 7. The minor is ordered to return.

**ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT**

*Charles R. Gill*

DATE: July 26, 2002                                          Charles R. Gill, Judge

Copy of Order Received by: _____        on Date: _____
                                    Minor's Signature

Witnessed by: _____
                        P.O./Clerk

ATTEST: The foregoing is a full, true and correct copy of the original on file in this office.
         Stephen Thunberg, Clerk of the Superior Court.

         By _____

DATE: January 23, 2003

_Theodore Weathers, Judge_

Copy of Order Received By _____    Minor's Signature _____    For Date _____

Witnessed By _____    Dep. Clerk _____

ATTEST: The foregoing is a full, true and correct copy of the original on file in the office of the
Clerk of the Superior Court

By _____

1    Q    DO YOU REMEMBER IF YOUR WINDOW WAS UP OR DOWN

2  WHEN YOU STOPPED?

3    A    IT WAS UP.

4    Q    WHAT HAPPENED NEXT?

5    A    THEY BOTH GOT OUT OF THE CAR.

6    Q    WHEN YOU SAY "THEY," ARE YOU TALKING ABOUT JIMMY

7  AND FILIBERTO OR --

8    A    YES.

9    Q    OKAY.  YOU ARE NOT TALKING ABOUT THE OCCUPANTS

10  OF THE MUSTANG, CORRECT?

11    A    NO.

12    Q    DID YOU EVER SEE ANYBODY GET OUT OF THE MUSTANG?

13    A    NO.

14    Q    WHEN -- DO YOU REMEMBER WHAT SIDE OF THE CAR

15  FILIBERTO GOT OUT OF?

16    A    THE RIGHT SIDE.

17    Q    THE SAME SIDE JIMMY DID?

18    A    YES.

19    Q    WHAT, IF ANYTHING, DID EITHER JIMMY OR FILIBERTO

20  SAY ABOUT WEAPONS BEFORE GETTING OUT OF THE CAR?

21    A    THEY DIDN'T SAY NOTHING THAT I CAN REMEMBER

22  ABOUT WEAPONS.

23    Q    DID YOU SEE ANY WEAPONS BEFORE THEY GOT OUT OF

24  THE CAR?

25    A    YES.

26    Q    WHAT DID YOU SEE?

27    A    A KNIFE.

28    Q    WHERE DID YOU SEE THE KNIFE?

1     A    IN JIMMY'S GLOVE COMPARTMENT.

2     Q    TELL US ABOUT THAT.  HOW IS IT THAT YOU CAME TO

3 SEE THE KNIFE?

4     A    AFTER HE CHANGED HIS SHOES, HE OPENED UP THE

5 GLOVE COMPARTMENT AND HE TOOK OUT A KNIFE.

6     Q    DID YOU SAY ANYTHING TO HIM?

7     A    TOLD HIM -- I TOLD HIM TO PUT IT BACK.

8     Q    WHAT DID YOU SEE HIM DO WITH THAT KNIFE?

9     A    I DON'T REMEMBER AFTER THAT WHAT HE DID WITH IT.

10     Q    AND DO YOU REMEMBER THE COLOR OF THAT KNIFE?

11     A    NO, I DON'T REMEMBER.

12     Q    WAS IT A KNIFE THAT FOLDED OR DID IT HAVE A

13 FIXED BLADE?

14     A    I REMEMBER IT WAS FOLDED.

15     Q    DID YOU EVER SEE THE BLADE?

16     A    NO.

17     Q    DID YOU SEE FILIBERTO HAVE ANY WEAPONS IN HIS

18 HANDS AT ANY TIME?

19     A    NO.

20     Q    ONCE THEY GET OUT OF THE CAR, WHERE DID THEY GO?

21     A    THEY APPROACHED THE BLACK MUSTANG.

22     Q    HOW LONG HAD THE MUSTANG BEEN SITTING THERE IN

23 THE STREET BEFORE JIMMY AND FILIBERTO GOT OUT OF THE CAR?

24     A    LIKE A MINUTE OR TWO.

25     Q    WAS IT MORE THAN A FEW SECONDS?

26     A    YES.

27     Q    DURING THE TIME THAT JIMMY AND -- JIMMY WAS

28 CHANGING HIS SHOES AND THE BLACK CAR WAS IN THE STREET

LAMAS said the gun used by the passenger looked like a revolver because of the curved shape of the handle and the loud blast. After the Mustang left, he saw a casing on the ground, which looked like it was from a .22.

When asked if he could identify the passenger of the Mustang who shot MARTINEZ, LAMAS said he hoped so. He stated the passenger had a shaved head and looked bald. He said he believed he was wearing a light colored t-shirt and might have had a small moustache. LAMAS said the driver of the Mustang had a goatee, but he did not get any further description.

LAMAS stated the Mustang was a newer model with dark tinted windows. He believed the windows were tinted because he could not see anyone in the back of the vehicle. He remembered seeing something shiny and believed the vehicle might have had some nice rims.

When asked if he knew why MARTINEZ's knife was lying on the ground next to him, LAMAS stated he pulled Jimmy's knife out while he was trying to find his cell phone to call 911. LAMAS did pull out the knife, but did not open the knife. He found Jimmy's cell phone and called 911 with the cell phone.

LAMAS stated that his "home girl" recently told him that her truck had been shot with a shotgun, and the shooters were in a Mustang. LAMAS did not know if this was related or not. When asked for his "home girl's" name, LAMAS was evasive and said that it was just a girl he knew. He eventually admitted that her first name was Tracy, but did not know her last name. When asked what type of vehicle she had that was shot, he said it was a red Chevy truck, and he believed it was probably a Tahoe. When asked where Tracy lived, he said she lived in El Cajon. When asked if he had a phone number for Tracy, he said no.

LAMAS then spoke about a stabbing that occurred recently at the Bella Vista Apartments, involving OEK and Locos. He explained that he is called "Hit man" but was not there the night of the stabbing. According to rumor however, he was there. He explained that being one of the older members, he had always been at the major incidents in the past, and therefore it is often assumed that he is still at all the incidents, even when he is not. He stated the night of the stabbing, he was either at work or at home. LAMAS believed that tonight's incident might possibly be a payback for the stabbing. LAMAS stated that Jimmy MARTINEZ got out of the gang a long time ago, and he himself was currently trying to get out. LAMAS said, "I take responsibility for stopping the car and all. I didn't plan on getting my friend shot."

LAMAS then stated that he thought the guys in the Mustang tonight might be Orphans and told MARTINEZ that. When asked why he thought they were Orphans, he said, "Because they were the ones that shot at my "home girl's" car. When asked how he knew that, he

CONFIDENTIAL
This case has been released by the El Cajon Police Department pursuant to California Penal Code 11075-11081. Subsequent distribution of information contained is restricted by Sec. 11140-11144 P.C. Release of juvenile records is restricted by LNG vs Superior Court.

EL CAJON POLICE DEPARTMENT

000100

00005mv.9

Detective WISSEMANN and I arrived at the hospital and interviewed LAMAS from 0430 hours to 0500 hours. The interview was audiotaped, and the audiotape was later turned over to Detective HOEFER to be placed into evidence.

## STATEMENTS OF FILIBERTO CHAVEZ LAMAS: (Victim/Witness)

LAMAS told me that "OEK" is an El Cajon based gang that consists of approximately 15 members and aligns itself with the "El Cajon Banditos" and the "Dukes". He said their main rivals are two El Cajon gangs, the "Locos" and the "Orphans". LAMAS said he claimed "OEK" for approximately 2-1/2 years, and his friend Jimmy MARTINEZ claimed "OEK" for four or five years. LAMAS said that MARTINEZ' moniker in the gang was "Chuko".. LAMAS said there were three or four main founding members of "OEK", and they consisted of himself, Jimmy MARTINEZ, and another person he wouldn't name by name but said they were currently in custody. LAMAS said these founding members of the gang had three dots tattooed on the middle finger of one of their hands. LAMAS also said that he and MARTINEZ no longer considered themselves members of the gang, and that they were out of it. LAMAS made the statement that he and MARTINEZ were "done with this". LAMAS said that he stopped associating with the gang after he spent a month in jail, starting on 11/10/03. LAMAS said that the majority of OEK members are or were students at Granite Hills High School, a "couple members" are or were students at El Cajon Valley High School, and a few members attended Chaparral High School.

LAMAS said that the history of violence between "OEK" and their rival gangs, "Locos" and "Orphans", has been going on for quite some time. LAMAS said that approximately two years ago, "Jimmy beat the crap out of some Orphans." LAMAS also told me about an incident in 2003 where a "Locos" gang member was stabbed by Idel HERNANDEZ, and "OEK" gang member. This incident occurred at Granite Hills High School. LAMAS said that he has personally been involved in at least six fights with "Locos" gang members and at least two fights with "Orphans" gang members. LAMAS also made the statement, "I've been jumped a couple times by Locos", stating that the most recent incident occurred at a "liquor store next to Bella Vista" apartments "two or three months ago". LAMAS said, "Locos tried to jump me" in the first week of November also.

LAMAS said the most recent incident between "OEK" and "Locos" was approximately one week ago at "Bella Vista" apartments. He said that in this incident, supposedly "Locos" gang members were stabbed by "OEK" gang members. LAMAS also said that "Orphans" and "Locos" have been after him since that incident because the word on the street was that he was either personally involved or at least present at the stabbings. When I asked LAMAS about the incident in which he was shot and MARTINEZ was killed, LAMAS made

**CONFIDENTIAL**

This case has been released by the El Cajon Police Department pursuant to California Penal Code 11075-11081. Subsequent distribution of information contained is restricted by Sec. 11140-11144 P.C. Release of juvenile records is restricted by TNG vs. Superior Court.

EL CAJON POLICE DEPARTMENT

000051

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☐ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☑ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

| | FOR COURT USE ONLY |
|---|---|

F I L E D

Clerk of the Superior Court

**JUL 1 9 2006**

By: S. FRUTOS, Deputy

PLAINTIFF(S)/PETITIONER(S)

**Ramon Contreras**

DEFENDANT(S)/RESPONDENT(S)

**Lamas, Filiberto**

**CLERK'S CERTIFICATE**

CASE NUMBER

**203-269**

I certify that each of the attached documents, as listed below, is a full, true and correct copy of the original on file in my office.

  Petition filed 11-17-03
  Miscellaneous Motion dated 12-10-03
  Probation Officer's Social Study Report dated 12-04-03
  Special Hearing dated 2-2-04
  Special Hearing dated 10-6-04

**CLERK'S CERTIFICATE**

The foregoing is a full, true and correct copy of the original on file in this office.

**CLERK OF THE SUPERIOR COURT**

Date: 7-19-06

by _____, Deputy

SDSC CIV-54(Rev 2-00)

**CLERK'S CERTIFICATE**

PO:   PAN         DANNY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN DIEGO
JUVENILE DEPARTMENT

PETITION - WARD                     Hearing Date: ___DEC  4 2003  8:30 A.M.
NOTICE OF HEARING                   Detention: _____
                                    Fitness: _____
                                    Regular: _____
                                    Judge Assignment: _____

FILIBERTO CHAVEZ LAMAS JR.          JDA No: C2487    1
A.K.A. CHAVEZ FILIBERTO AIMS        REJIS:  20022163
                                                      203269
Age:  17   Birthdate: 12/23/1985    Petition No: _____

Address: 703 LINGEL DRIVE           W & I SECTION 602
         EL CAJON, CA 92019
         (619)659-8538


I, the undersigned petitioner allege:

(1)  This person comes within the provisions of Section 602 of the
     Juvenile Court Law, Welfare and Institutions Code or other laws
     of California.

(2)  The offenses enumerated below may result in the violation of any
     probation previously granted and the imposition of any previously
     unexpired term of detention.


COUNT 1:  Said person, on or about 11/15/03, did unlawfully carry
concealed upon his person a dirk and dagger, in violation of Penal
Code section 12020(a), a felony. (To wit: knife)

COUNT 2:  Said person, on or about 11/15/03, did unlawfully possess a
device, contrivance, instrument, paraphernalia used for unlawfully
injecting and smoking controlled substances, in violation of Health
and Safety Code section 11364, a misdemeanor. (To wit: glass pipe)


SDSC JUV-61C(Rev 5-03)

Petition re FILIBERTO CHAVEZ LAMAS JR. , JDA No. C2487 1    Page    2

(3)  The names and addresses  of  the  above  named  person's  parents
     and/or guardian or of an adult relative living within the County,
     or living nearest this Court known to me, are as follows:

========================================================================
         Service                  Relationship
Method   Date-Place               Name-Address-Phone
------------------------------------------------------------------------
(Mail)
(Pers)   Juvenile Court           FATHER
                                  FILIBERTO LAMAS SR
                                  UNKNOWN
------------------------------------------------------------------------
(Mail)   NOV 1 8 2003             MOTHER
(Pers)   Juvenile Court           LAURA N MOSS
                                  703 LINGEL DR
                                  EL CAJON, CA 92019
                                  (619)659-8538
------------------------------------------------------------------------
(Mail)   NOV 1 5 2003
(Pers)   Juvenile Court           (Minor Shown Above)
------------------------------------------------------------------------
(Mail)   NOV 1 5 2003             DEPARTMENT OF THE PUBLIC DEFENDER
(Pers)   Juvenile Court           ATTORNEY:    8525 GIBBS DRIVE SUITE 105
                                               SAN DIEGO CA 92123
                                               DELINQUENCY SECTION
                                               (858) 974-5787
========================================================================

(4)  The above named person is detained.

(5)  Taken into custody at  06:45 AM November 15, 2003

THEREFORE,  I  request  that  this  person  be  declared a ward of the
Juvenile Court.

     I certify under penalty of perjury that the foregoing is true and
correct, except as to the matters  which  are  therein  stated  on  my
information  and  belief,  and  as to those matters I believe it to be
true.

Date:  November 17, 2003          BONNIE M. DUMANIS, Petitioner


                                  By _____
                                     Deputy District Attorney


RDAP25P1(200311171538333)CMINASDA


SDSC JUV-61C(Rev 5-03)

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

PO: Probation To Court                                                                    **MISCELLANEOUS MOTION**

Court No: JCM203269 01   JDA No: C2487    Probation No: 20022163                    Date: December 10, 2003   Time: 9:00 am

IN THE MATTER OF:    FILIBERTO CHAVEZ LAMAS JR. - A MINOR
                                    Date of Birth: December 23, 1985
                                    Minor's Attorney:  (Public Defender)

JUDGE: Melinda Lasater                                    CLERK: F. Lynn Drake
                                                REPORTER: Leonard Daniels, CSR No: 3376
DEPT: C32                                                    P. O. Box 128, San Diego, Ca 92112-4104

**PRESENT BEFORE THE COURT:**

DISTRICT ATTORNEY :                                    COURT OFFICER:
   Douglas Rose, Deputy District Attorney
ATTORNEY FOR MINOR:                                    PROBATION OFFICER:
   Laura Arnold, Public Defender
ALSO BEFORE THE COURT:
   The minor is present.

**THE MATTER COMES BEFORE THE COURT FOR:**

- Original 602 petition filed November 17, 2003.
- Defendant's Motion to Suppress Evidence per PC 1538.5 is denied.
- Witness Michael C. Doyle, El Cajon Police Department, is sworn and examined by the People.
- Witness Fillberto Lamas, is sworn and examined by Defense Attorney.

**THE COURT FINDS:**

- The minor admits to Count 1, PC12020(a), a felony.
- After considering evidence and testimony, the petition is sustained and the minor is in violation of the counts listed above.
- The Court dismisses Count 2, HS11364, a misdemeanor.
- Defendant waives statutory time for trial.

**THE COURT ORDERS:**

- Defendant is ordered released from custody on home supervision.
- Minor is placed on home supervision and must be in the presence of his mother or stepfather only.
- The minor is to be drug tested one time per week.
- The minor is to register and take his GED.
- Counsel is to register the minor in an educational program.
- The minor is to attempt to get a job.
- The minor pleads guilty to Count 1 - to reduce to a misdemeanor upon successful completion of probation.
- Count 2 is dismissed.
- Other recommendations as noted.
- The matter is set for Disposition Hearing (C2487) on January 15, 2004 at 1:30 pm in Department C32. The minor is ordered to return.

**ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.**

Court No: JCM203269 01    JDA No: C2487    Probation No. ..0022163    12-10-2003    Time: 9:00 am    FILIBERTO CHAVEZ LAMAS JR.    Page 2

DATE: December 10, 2003

Melinda Lasater, Judge

Copy of Order Received By: _____    on Date: _____

Minor's Signature

Witnessed By: _____

P.O. / Clerk

ATTEST: The foregoing is a full, true and correct copy of the original on file in this office.
Clerk of the Superior Court.

By _____

JCM203269-01 5/11/2004 4:56:55 PM CTARASSP

**SAN DIEGO COUNTY PROBATION DEPARTMENT**
**JUVENILE FIELD SERVICES**
**PROBATION OFFICER'S SOCIAL STUDY**

| | | |
|---|---|---|
| IN THE MATTER OF:<br>FILIBERTO CHAVEZ LAMAS JR. | HEARING DATE/TIME:<br>12-04-03 @ 08:30 | DEPT. & JUDGE:<br>007/CHARLES GILL |
| TRUE NAME:<br>FILIBERTO CHAVEZ LAMAS JR. | JDA NO.:<br>C2487 | REJIS NO.:<br>20022163 |
| AKA:   CHAVEZ FILIBERTO LAMAS<br>       FILIBERTO CHAVEZ MOSS<br>       "BETO"  "HITMAN" | PETITION NO.:<br>M0203269 | ATTORNEY:<br>(PD) ARNOLD<br><br>APPT. _X_ RET._____ |
| COURT STATUS: ALLEGED WARD<br><br>COUNTY OF LEGAL RESIDENCE:<br>SAN DIEGO | PROBATION OFFICER:<br>CATALINA TABACCO | PO TEL. NO.:<br>(858)694-4282 |
| MINOR'S ADDRESS:<br>703 LINGEL DRIVE<br>EL CAJON, CA 92019-1450 | TEL. NO.:<br>(619)659-8538 | BIRTHPLACE/CITIZENSHIP:<br>SAN DIMAS,CA/CIT |
| MINOR'S CURRENT LOCATION:<br>JH | SOC. SEC. NO.:<br>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 | D/L #: D3805609 CA<br><br>INS #: |
| | LAST SCHOOL:<br>LAKESIDE SUMMIT | GRADE:  12 |

| DOB:<br>12-23-85 | AGE:<br>17 | RACE:<br>200 | SEX:<br>M | HT.<br>603 | WT.<br>200 | EYES:<br>BRN | HAIR:<br>BLK |
|---|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| FATHER'S NAME:<br>LAMAS,<br>FILIBERTO SERRANO | MOTHER'S NAME:<br>MOSS,<br>LAURA NOEMI CHAVEZ | JUVENILE HALL DATES FOR THE<br>INSTANT OFFENSE:<br>   BOOKED:   11/15/03<br>   RELEASED: N/A |

| | | | | |
|---|---|---|---|---|
| MAXIMUM AGGREGATE CONFINEMENT TIME: | _____YEARS | _____MONTHS | _____ DAYS | _X_ TBD |
| TOTAL CUSTODY CREDITS: | | | 20 DAYS | ____ TBD |
| TOTAL CONFINEMENT TIME AVAILABLE: | | | _____ DAYS | _X_ TBD |

[X] ATTACHMENTS   [ ] NO ATTACHMENTS   [ ] REPORT(S) NOT RECEIVED BY P.O.

DATE MINOR WAS FIRST REMOVED FROM HOME BY THE COURT RELATIVE TO THIS PETITION: 11/15/03

**ALLEGATIONS:**                                              **FINDINGS:**

COUNT 1    PC 12020(a), Possession of a Knife,        TBD
           Felony

COUNT 2    H&S 11364, Possession of Narcotic          TBD
           Paraphernalia, Pipe

**RECOMMENDATION:** WIC 602,  B.C. 90 days, Own Home

FILIBERTO CHAVEZ LAMAS JR.                                    12-04-03
20022163

**OFFENSE INFORMATION**:

Source:  Law Enforcement Reports, El Cajon Police Department

**Petition Dated**: 11/17/03

Count 1    Offense date: 11/15/03

On the above date, at approximately at 6:45 hours at 550 Montrose, El Cajon, California, the minor was contacted in the parking lot of the Motel Six. During a consensual contact, Officers located a butcher knife, with silver duct tape wrapped around the handle.  Upon discovering the knife, the minor volunteered the information that he had a glass pipe, 6" long with a bulbous end.  Officers confiscated the pipe from the minor's left front pants pocket. Officers noted that there was "residue" in the pipe.   The minor was transported to Juvenile Hall, where he remains pending today's Court hearing.

**DELINQUENT HISTORY**:

Source:  Computer checks, Probation records

| Offense Date | Charges | Disposition |
|---|---|---|
| 4/19/02 | PC 12020(a)/17bc | Ref'd to Probation; Minor agreed to Diversion Program. |

In the above matter, El Cajon Police Department observed the minor in possession of a baseball bat.  He was standing by a group of subjects across the street from Granite High School.  The minor was observed taking the bat and concealing it in his pants.  The minor began walking west into Kennedy Park with the bat.  Subsequently, the minor was observed taking the bat out of his pants and hand it to a friend.

The minor completed the Diversion Program by completing his 20 hours of community service work, clean drug testing, and school attendance.

---

| 8/31/03 | PC 148 | Closed after Intake |
|---|---|---|

In the above matter, the minor admitted to being in the park with some friends and once he saw the police, he ran.  The minor stated that the police had been giving him "problems."  Rather than stay and receive more problems, he decided to leave the area.

---

| 11/15/03 | INSTANT OFFENSE | 20 days |
|---|---|---|

- 2 -

FILIBERTO CHAVEZ LAMAS JR.                                          12-04-03
20022163

**TRAFFIC COURT:**

**Offense**
**Date**        **Charges**            **Disposition**

3/7/02        PC 415.5(a),          Minor Reprimanded

**STATEMENT OF MINOR:**

Date and location of interview: 11/23/03 at Juvenile Hall, Unit 1400

Subsequent to admonishment, the minor agreed to the interview.  Regarding the
offense that occurred on 11/15/03, the minor states that, "I obtained the
knife from a friend.  Also, a friend gave me the pipe."  The minor went on to
state that he wanted to carry the knife for his "own protection."  Also, he
wanted to protect his girlfriend.   The minor stated that he has been
"jumped," and wanted to prepare himself for any further problems.  The minor
acknowledged that carrying the knife is unlawful.

With respect to the pipe, the minor admitted that he had used it to smoke
crystal meth.  He last smoked crystal methamphetamine two days prior to his
arrest.

With respect to his relationship with his parents, the minor stated that,
"David (stepfather) is a good person...My mother I have problems."  The minor
further added prior to moving to San Diego County, approximately two and a
half years ago, he was living in Riverside and also in San Bernardino with
his biological father.   He stated that he has "nothing but unpleasant
memories from those years with my dad."

The minor stated that he seems to feel resentful because he had not seen his
mother for several years.  He admitted that this has caused him to become
angry at times.   He has been rebellious, by not coming home on occasion,
associating with friends of whom his parents disapproved and being involved
in physical altercations.

As to disposition, the minor states, "This one week in Juvenile Hall has been
the worst of my life."  The minor stated he knows that what he did was wrong,
by carrying the weapon and having the pipe.  He would like the Court to give
him "a chance to go home."  The minor reported that prior to his arrest, he
was making arrangements to obtain his GED and had finalized his plans to
enter the U. S. Army.  The minor would like to be released to his mother and
step-father and continue with plans.

- 3 -

FILIBERTO CHAVEZ LAMAS JR.                                              12-04-03
20022163

The minor added that he does not feel that he is a "danger to other people,"
despite being arrested one time with a baseball bat and this time with a
knife.  The minor added that he has had some difficulties with El Cajon
Police Department.  He claims that there is one Officer who is always
"laughing at me and waiting for me to do something wrong."  The minor stated
that if the Court grants him authority to return home, there will never be a
need to be contacted by the police again because he will obey all laws.

**STATEMENT OF PARENT**:

Date and location of interview: 11/23/03 at Juvenile Probation Center

The undersigned did not interview the biological father, who repeatedly
resides in either San Bernardino or Riverside County.  The mother presented
documents to the Probation Officer which indicated that she had physical
custody of the minor.

Thereupon the undersigned completed the interview with the minor's mother,
Laura N. Chavez Moss, and the minor's step-father, David Moss.  The mother
seemed to be very upset, indicating that she felt that she was the one "to
blame."  The mother then discussed her many years of living in an abusive
relationship with the minor's biological father.  According to the mother,
the situation became so intolerant that it was either "death or leave him."
The mother chose to return to Mexico for a brief period.  The mother believes
that this was the "deciding factor that caused my children to have problems."

Since the minor has returned to her custody, he in many respects has shown a
lot of responsibility.  The step-father reported that they have a very good
relationship.  They often have "quality time together" in the form of
fishing, hunting, and talking.  The family further confirmed the minor's
plans with the military and also his GED.  The parents would request that the
minor be allowed to "eventually" return home.  The parents recognize that the
minor needs to take consequences.  The parents would like to leave the final
decision up to the Court.

The mother noted that since the minor has been in Juvenile Hall for the past
week, she has felt more at ease, insofar as she knows exactly where her son
is and he is not endangering his life.

**MINOR'S PERSONAL HISTORY**:

**School**:

Source:    [X] Mother

Last Attended:  Lakeside Summit     Date: 6/03          Grade: 12

[ ] Regular          [X] Continuation     [ ] Home Study       [ ] Court School

- 4 -

FILIBERTO CHAVEZ LAMAS JR.                                          12-04-03
20022163

**Most Recent Grades**:  4/4/03

| **SUBJECT** | **ACADEMIC GRADE** | **CITIZENSHIP** |
|---|---|---|
| English | C      • | C |
| Algebra | D | C |
| Contemporary History | D | C |
| Earth Science | F | F |
| Geography | F | F |
| Ecology | C | C |

Attendance:     [ ] Good        [ ] Some Truancy        [X] Habitually Truant

Comments:

It should be noted that when the minor was at Granite Hills High School in
the first semester of 2001, he earned five B's and one A.  At that time his
grade point average was 3.5.

**Substance Abuse History**:

Source:    [X] Minor [X] Parent/Caretaker

| SUBSTANCE | USAGE | | | | |
|---|---|---|---|---|---|
| | Daily | Weekly | Monthly | Rarely | None |
| Alcohol* | | | X | | |
| Marijuana* | | | X | | |
| Methamphetamine* | | | X | | |
| PCP | | | | | X |
| Other Stimulants | | | | | X |
| Cocaine | | | | | X |
| Heroin | | | | | X |
| Other Depressants/ Opiates | | | | | X |
| Hallucinogens | | | | | X |
| Inhalants | | | | | X |

*sometimes more often

- 5 -

FILIBERTO CHAVEZ LAMAS JR.                                    12-04-03
20022163

Comments:

The minor stated that when he was age 14, he first drank "hard liquor."  At
the age of 14, he would drink alcohol "if it was there."  At the age of 14,
he first smoked marijuana.  At the age of 15, he began smoking marijuana
"whenever it was around."  The last time he smoked it was one month ago.  The
minor also stated that he had been smoking tobacco cigarettes.  One year ago
he began smoking crystal methamphetamine.  He estimates that he was smoking
it approximately one time per week.  The minor states that on the date that
he was arrested, he had told his girlfriend that he wanted to quit taking
meth.  He last used meth two days before the incident.

**Substance Abuse Simple Screening Instrument (SSI)**:

[X] Yes  [ ] No     Date: 11/23/03

Score:     [ ] None to Low          [ ] Minimal          [X] Moderate to High

**Gangs/Tagger Affiliation**:

[X]  Associates with gang/crew members. Source: Minor's case file
[X]  Gang member. Source: OEK
[X]  Tagger.  Source: Minor's case file
     Moniker: Hitman and Beto  Tattoos: Three dots inside right middle finger

Comments:

The minor indicated that he did not really want to answer the question about
whether he was in a gang or not because this is not the issue as to why he is
going before the Court.  The minor did volunteer the information that he
"used to kick it with a group of guys."  The minor stated that now he spends
his time with his  20-year-old girlfriend.

Cal Gangs reported that the minor is not documented.

**Physical Health/Mental Health**:

The minor and his mother report that the minor is in good physical health.
The minor and his mother reported that he has never been institutionalized or
has had any mental disorder.

**Psychological Evaluation**:  [ ] Yes  [X] No

**Counseling History**:

Source: Minor/Mother/Case file

[X] Substance Abuse     [X] Family         [ ] School        [ ] Psychiatric
[ ] Suicidal Ideation   [ ] Sexual Abuse                     [X] Other

- 6 -

FILIBERTO CHAVEZ LAMAS JR.                                    12-04-03
20022163

Comments:

The mother reported that she and her children attended out-patient counseling
in La Mesa, related to the father's domestic violence.

According to Ms. Moss, the minor agreed to participate in the "Phoenix
Program" in 2002.  The mother claims that this was a voluntary day treatment
program, from which after a period of time, the minor was terminated from the
program for non-attendance.

The mother reported that when the biological parents were still married, in
approximately 1991, the family was receiving pastoral counseling.

**HEALTH AND HUMAN SERVICES/CHILD WELFARE HISTORY:**

On 11/19/03, Marisol of HHSA, reported the following:

| Referral Date | Reason | Disposition |
|---|---|---|
| 4/23/96 | Physical Abuse; No Perp (occurred in San Bernardino) | Closed 4/25/96; Inconclusive. |

**Abuse History:**

Source:  Minor/Mother

[ ] None   [ ] Sexual    [X] Physical     [X] Emotional

Comments:

The father, due to an alleged alcohol/drug problem, was an abusive man,
according to the minor and his mother.  The father would slap, kick, punch,
and use belts in a fit of rage, when he was trying to discipline the minor
and his siblings.

**Previous Out of Home Placements: [X] Yes      [ ] No**

Source: Minor/Mother                     [X ] Court ordered
                                         [ ] Private
Comments:

The mother indicated that upon the separation of the parents, the father was
awarded physical custody as a result of divorce proceedings.  It was during
this time that the minor resided with his father in Glendora, Riverside, San
Bernardino.   The mother proceeded to regain custody of the minor in
approximately 1999.

**Employment History:**        [X] Yes  [ ] No

Source: [X] Minor        [X] Mother

- 7 -

FILIBERTO CHAVEZ LAMAS JR.                                      12-04-03
20022163

Comments:

The minor worked at Anthony's Fish Grotto as a busboy for approximately eight
months.  For the last six months, the minor has been working at a Taco Bell
in El Cajon, where he is a cashier.  He has been working at least five hours
a week.  With his earnings, the minor gives $50 to his mother for family
maintenance.

**Juvenile Hall Adjustment:**

The minor is being detained in Unit 1400.  On 11/23/03, consultation with
Juvenile Hall staff in Unit 1400 revealed that the minor is "doing an
outstanding job."  The minor's record is "perfectly clean."  He cooperates
with the Unit Program and shows good social skills.

**Probation Adjustment:**

The minor was never adjudicated a WIC 602, nor was he on informal
supervision.  The minor was assigned to the Diversion Program, which he
completed.

**THE FAMILY:**

The minor's biological parents were born, reared and married in Mexico.  The
mother explained that she and her husband lived in the Los Angeles/San
Bernardino area until they separated in 1992, where they subsequently filed
for divorce proceedings.  The mother stated that she immigrated to the United
States in 1986.  The father reportedly has another family.  He has worked for
numerous years for Anheiser Brewery.

The mother explained that during her absence from her children, she lived in
Tijuana with her mother, the minor's maternal grandmother.  While in Tijuana
she met her present husband, David Moss.  The couple reportedly were married
in 1999.  Mr. Moss is an engineer, currently unemployed.  The mother has
worked as a waitress at Anthony's Fish Grotto in downtown San Diego for
approximately 10 years.  The minor's sister, Delfina Chavez Lamas, DOB:
2/27/1975, resides in San Diego and is a waitress at I-Hop.  Another sister,
Quendolyn Lina Chavez Lamas, DOB: 11/22/1980, works for a phone company.

Currently, the mother, minor and Mr. Moss reside in a two-bedroom home, which
was originally Mr. Moss', but now belongs to the family.  The family had to
evacuate during the natural disasters (fires).

There are no on-going community activities.  The mother stated that church
attendance is practically non-existent because of a pastor who advised the
mother not to leave her abusive husband.  The mother stated that despite the
issue with the pastor, she continued to instill religious teachings.

- 8 -

FILIBERTO CHAVEZ LAMAS JR.                       12-04-03
20022163

**Law Enforcement History:**

Source: Cal ID, local records, FBI

**[X]** No record found.

**EVALUATION:**

Filiberto Chavez Lamas, age 17 years, 11 months and 14 days, is appearing before the Court on this date for his fast track hearing. The minor has a charge of possession of a dangerous weapon, a butcher knife, and possession of a methamphetamine pipe. The minor has two prior referrals, which were handled by a Diversion Program and informal action. The minor has a fighting in public offense, for which he appeared in Traffic Court and was reprimanded.

The minor has admitted to the offense and expressed that he has had an anger management program. The minor has requested help with this problem. The minor has also admitted to significant alcohol, substance abuse and tobacco abuse. The minor also admits to having a history of anger management problems as a result of growing up in a domestic violence environment.

The minor is having peer problems due to his anger management issues. The minor's mother feels that the minor needs to have immediate consequences in order to get his attention. She is fearful she will lose her son if there is not some type of intervention. The Probation Officer recommends that the minor be declared a WIC 602 ward and committed to Breaking Cycles, not to exceed 90 days. A commitment to Breaking Cycles will give the minor consequences and serve as a wake-up call that people are not allowed to carry weapons or treat others in an angry, violent manner. This Officer strongly recommends the minor become involved in a domestic violence program or battered treatment program to break the cycle of violence. This, in addition to standard conditions of probation, may give the minor new insights into his past, understand his feelings, and how to form health, stable relationships. The minor seems to have a lot of potential to become an outstanding and productive member of society.

With the above in mind, the following recommendations are respectfully submitted for the Court's consideration.

FILIBERTO CHAVEZ LAMAS JR.                                    12-04-03
20022163

**RECOMMENDATION:**   See attached


                              Respectfully Submitted,

                              DAVID E. CRANFORD
                              Chief Probation Officer (Acting)


                              By:

                              CATALINA TABACCO
                              Senior Probation Officer
                              (858)694-4282

Approved:
                        LETICIA SANDOVAL Supervisor
                        (858)694-4330


CT/st:jvss:11/26/03


                              - 10 -

FILIBERTO CHAVEZ LAMAS JR.          12-04-03
20022163

## RECOMMENDATIONS:

1.  **(DW020)**    Said person is adjudged a ward pursuant to WIC 602.

2.  **(DW080)**    CARE, CUSTODY, AND CONTROL OF MINOR IS TO BE UNDER THE
                   SUPERVISION OF THE PROBATION OFFICER.

3.  **(PL055)**    Continuance in the home is contrary to the child's welfare.
                   Reasonable efforts have been made and will continue to be
                   made to prevent or eliminate the need for removal of the
                   minor from his/her home and make it possible for the child
                   to return to his/her home.

4.  **(PL090)**    Custody is taken pursuant to WIC 726(a)(3).  The welfare of
                   the ward requires that custody be taken from the parent or
                   guardian.

5.  **(PL165)**    MINOR IS COMMITTED TO BREAKING CYCLES FOR A PERIOD NOT TO
                   EXCEED 90 DAYS.

6.  **(PL190)**    UPON COMPLETION OF THE COMMITMENT THE MINOR IS PLACED WITH
                   HIS MOTHER AND STEP-FATHER, LAURA CHAVEZ MOSS AND DAVID
                   MOSS, AT 703 LINGEL DR., EL CAJON, CA  92019.

7.  **(DT140)**    Detained in Juvenile Hall.

8.  **(GC131)**    Minor has an exception to curfew for verifiable school or
                   employment activities.

9.  **(GC160)**    Minor shall report to the Probation Officer within 30 days
                   from disposition or release from placement or commitment to
                   arrange compliance of conditions of probation.  Minor shall
                   also report to any future court hearing as directed by the
                   Probation Officer.

10. **(GC165)**    Minor shall report to the Probation Officer at such times
                   and places as directed.

11. 0**(GC175)**   Minor shall follow the rules and instructions of the
                   Probation Officer; report any law enforcement contacts to
                   your Probation Officer within three days.

12. **(GC190)**    Minor shall obey all Federal, State, County, and City laws.

13. **(GC140)**    Minor shall not leave the County of San Diego without the
                   permission of the Probation Officer.

14. **(GC200)**    Minor shall follow the rules and instructions of the person
                   or persons with whom you are ordered placed by the Court.
                   You are not to leave your court-ordered placement without
                   your parent or guardian's permission.

- 11 -

FILIBERTO CHAVEZ LAMAS JR.                                      12-04-03
20022163

15.  **(GC210)**    Minor shall report any change of address or school
                    attendance to your Probation Officer within three days.

16.  **(GC215)**    Minor shall attend school unless officially excused from
                    school attendance; obey the rules and conditions of the
                    school, maintain passing grades and satisfactory
                    citizenship.  Minor shall show proof of attendance or other
                    school records whenever requested by the Probation Officer.

17.  **(CN075)**    The minor's parent(s) are ordered to participate in their
                    child's school program as required by the rules of the
                    minor's school.

18.  **(SB070)**    The mother/father is to follow school directions and
                    cooperate with school officials.

19.  **(GC130)**    Minor shall be at his legal residence between the hours of
                    6:00 p.m. and 6:00 a.m. unless in the company of his
                    parent/legal guardian or adult person having legal care or
                    custody of the minor, subject to modification at the
                    Probation Officer's discretion.

20.  **(RS080)**    Minor shall pay a fine in the amount of $119 pursuant to WIC
                    730.5 including penalty assessment and a surcharge of 20%
                    pursuant to PC1465.7 at $25 per month, commencing 30 days
                    after release from custody, as directed by the Probation
                    Officer.

21.  **(RS155)**    Minor shall pay a restitution fine pursuant to WIC 730.6 in
                    the amount of $100, to be paid in full prior to the
                    completion of wardship.

22.  **(CS010)**    Minor shall complete 40 hours of community service as
                    directed by the Probation Officer.

23.  **(CN065)**    The minor's parent(s), or guardian(s), shall complete a
                    parenting class as directed by the Probation Officer, and
                    provide proof as ordered.

24.  **(CN080)**    The minor and the minor's parent or guardian shall
                    participate in a counseling or education program pursuant to
                    WIC 729.2 as directed by the Probation Officer.

25.  **(CN010)**    The minor and mother shall participate in a counseling or
                    treatment program pursuant to WIC 727(c) as directed by the
                    Probation Officer.  Therapist is to provide diagnostic and
                    progress reports to the Probation Officer whenever
                    requested.

26.  **(CN020)**    Minor shall attend Alcoholics Anonymous as directed by the
                    Probation Officer and provide proof as ordered.

FILIBERTO CHAVEZ LAMAS JR.                                    12-04-03
20022163

27.  **(CN030)**    Minor shall attend Narcotics Anonymous as directed by the
                    Probation Officer and provide proof as ordered.

28.  **(CN060)**    Minor shall complete a Batterer's Treatment Program as
                    directed by the Probation Officer and provide proof as
                    ordered.

29.  **(CN035)**    The minor shall participate in a substance abuse treatment
                    program as directed by the Probation Officer.  The minor's
                    parent(s), or guardian(s), shall participate in a treatment
                    program orientation and/or counseling and/or parent program
                    as directed by the treatment provider.

30.  **(GC100)**    Minor shall not use or possess alcohol or controlled
                    substances without a valid prescription and shall submit to
                    testing for the detection of alcohol or controlled
                    substances whenever directed by any law enforcement or
                    Probation Officer.

31.  **(GC070)**    Minor shall submit his/her person, property, vehicle, and
                    any property under his/her immediate custody or control to
                    search at any time, with or without probable cause, with or
                    without a search warrant by any law enforcement officers or
                    peace officers, Probation Officers, school officials or
                    officers, and any other state security officers or agents
                    engaged in the lawful performance of their duties.

32.  **(GC075)**    The contraband seized by the Probation Department shall be
                    either destroyed or retained by the Probation Department for
                    educational purposes, at their discretion.

33.  **(GC015)**    Minor shall not associate with, contact, annoy, molest, or
                    be in the company of any other person designated by the
                    Probation Officer.

34.  **(GC020)**    Minor shall not be within one block of 550 Montrose, El
                    Cajon.

35.  **(GC040)**    Minor shall have no contact direct or indirect with any
                    victim/witness(es)/co-offender in this matter or any of
                    their family members.

36.  **(GC170)**    Minor shall not be on any school grounds unless an enrolled
                    student and it is during regular school hours unless
                    authorized by the Probation Officer.

37.  **(GC180)**    Minor shall not be in any privately owned vehicle with more
                    than one person under the age of 18 unless accompanied by a
                    parent or legal guardian or with permission of the Probation
                    Officer.

- 13 -

FILIBERTO CHAVEZ LAMAS JR.                                      12-04-03
20022163

38.  **(GC240)**    Minor is not to enter Mexico unless in the immediate custody
                    and control of the parent or legal guardian and with prior
                    Probation Officer permission.

39.  **(GC080)**    Minor shall not use, possess, transport, sell, or have in or
                    under his/her control any firearm, replica, ammunition, or
                    other weapon, including a knife, any explosive or any item
                    intended for use as a weapon, including hunting rifles or
                    shotguns.

40.  **(GC065)**    Minor shall not associate with or be in the company of OEK
                    or any documented gang members and wear any item of clothing
                    such as a hat, bandanna, badge, logo, jewelry or possess any
                    gang paraphernalia including photos or graffiti associated
                    with the above named gang.

41.  **(DL190)**    The Court recommends that the minor's driving privilege be
                    suspended for five years or that the Department of Motor
                    Vehicles delay issuing the privilege to drive for five years
                    pursuant to CVC 13202.4.

42.  **(DL030)**    Certified abstract to issue forthwith to the Department of
                    Motor Vehicles.

43.  **(DL140)**    Minor shall not operate a motor vehicle unless properly
                    licensed and insured.

44.  **(DL150)**    Minor shall not drive with any measurable amount of alcohol
                    or any controlled substance in his system.

45.  **(DL160)**    Minor shall submit to testing for the detection of blood
                    alcohol or controlled substance whenever requested by any
                    law enforcement or Probation Officer as a result of a
                    traffic stop.

46.  **(Rev**       Annual review hearing is set for 12/3/04.
     **scr)-9**

47.  **(Scr)-11**   All prior orders not in conflict remain in full force and
                    effect.

- 14 -

DJH

# Superior Court of the State of California, County of San Diego

*CDJH/PTCT/T

## JUVENILE COURT MINUTE ORDER

PO: Catalina Tabacco

**SPECIAL HEARING**

Court No: JCM203269 01    JDA No: C2487    Probation No: 20022163                    Date: February 2, 2004    Time: 8:30 am

**IN THE MATTER OF:**    FILIBERTO CHAVEZ LAMAS JR.
Date of Birth: December 23, 1985
Minor's Attorney:  (Public Defender)

JUDGE: Theodore Weathers                        CLERK: Gloria Carrillo
                                  REPORTER: Betty Ashe, CSR No:
DEPT:  7                                  P. O. Box 128, San Diego, Ca 92112-4104

---

**PRESENT BEFORE THE COURT:**

DISTRICT ATTORNEY :                        COURT OFFICER: David Joralemon
  James Romo, Deputy District Attorney, under the direct supervision of
  Minaz Bhayani, Deputy District Attorney
ATTORNEY FOR MINOR:                        PROBATION OFFICER:
  Laura Arnold, Public Defender
ALSO BEFORE THE COURT:
  The minor, the mother and the father are present.
  An interpreter.

---

**THE MATTER COMES BEFORE THE COURT FOR:**

- Original 602 petition filed November 17, 2003.
- Certified Spanish interpreter ROSITA SILVERA FOR MOTHER.  Interpreter has an oath on file.
- MINOR IS SERVED WITH A SUBPOENA FORTHWITH BY INVESTIGATOR JAMES BUSH OF DISTRICT ATTORNEYS OFFICE FOR 3-8-2004 AT 840 AM DEPT. 11- EL CAJON COURT.

**THE COURT FINDS:**

- The Court has read and considered the report of the Probation Officer dated February 2, 2004 and it is admitted into evidence by reference.
- Detention is necessary for the protection of the minor.

**THE COURT ORDERS:**

- The minor is continued a ward pursuant to WIC 602 and granted probation to the Court for one year.
- The minor is continued detained in Juvenile Hall pending transportation.
- The minor shall obey all Federal, State, County and City laws.
- PREVIOULSY ORDERED COMMITMENT/PLACEMENT IS VACATED.
- The minor is ordered to provide proof of compliance with all conditions of probation at the next review hearing.
- The minor shall not wear any item of clothing such as a hat, bandana, badge, logo, jewelry that is gang related; possess any gang paraphernalia including photos or graffiti; or use a hand sign or name identifying the minor with the OEK gang.
- The minor shall not use or possess alcohol or controlled substances without a valid prescription and shall submit to testing for the detection of alcohol or controlled substances whenever directed to do so by any law enforcement or probation officer.
- The minor shall not use, possess, transport, sell or have in or under his/her control any firearm, replica, ammunition or other weapon, including a knife, any explosive, or any item intended for use as a weapon, including hunting rifles or shotguns.
- Minor shall not be within ONE BLOCK of E. MADISON AND E. LEXINGTON IN EL CAJON..
- The minor shall submit his/her person, property, or vehicle, and any property under his/her immediate custody or control to search at any time, with or without probable cause, with or without a search warrant, by any law enforcement officer or peace officers, probation officers, school officials or officers, and any other state security officers or agents engaged in the lawful performance of their duties.
- The minor shall pay a court security fee in the amount of $20.00 pursuant to PC 1465.8 and WIC 730.5, payable concurrently with all other fines and/or restitution through Revenue and Recovery.
- The minor shall pay a restitution fine pursuant to WIC 730.6 in the amount of $50.00, to be paid in full prior to completion of wardship.
- MINOR TO ATTEND 1 AA/NA OR 12 STEP MEETING PER WEEK FOR 52 WEEKS.
- The minor shall attend Alcoholics Anonymous and provide proof as directed by the court.
- The minor shall attend Narcotics Anonymous and provide proof as directed by the court.
- The minor shall not be on any school grounds unless an enrolled student and it is during regular school hours, and unless authorized by the court.

Court No: JCM203269 01   JDA No: C2487   Probation No: 2002163   02-02-2004   Time: 8:30 am     FILIBERTO CHAVEZ L. , AS JR.                     Page 2

- The minor shall not be in any privately owned vehicle with more than one person under the age of 18 unless accompanied by a parent or legal guardian, or with permission of the Court.
- The minor is not to appear in Court or at any courthouse unless a party or witness in the proceedings, or with permission of the Probation Officer.
- The minor is not to be an occupant of any vehicle that he/she knew or should have known was stolen.
- The minor is not to enter Mexico unless in the immediate custody and control of the parent or legal guardian and with prior permission of the Court.
- Minor is to be detained in Juvenile Hall pending his release to the Probation Officer for transportation to San Diego Lindbergh Field for set flight to Milington, Tennessee.
- Probation is authorized to transport the minor.  County Treasurer is authorized to pay for the transportation as necessary.
- The minor's parent(s) or guardian(s) shall ensure the minor follows all conditions of probation, rules and instructions of the Probation Officer.  The parent(s) shall report any probation violations or law enforcement contacts made with the minor to the Probation Officer within 3 days.
- MINOR IS ORDERED TO COMPLY WITH SUBPOENA HE WAS JUST SERVED WITH.
- Minor is allowed a special visit with PARENTS.
- The matter is set for 15 Day Review Hearing (C2487) on February 17, 2004 at 9:00 am in Department 7.
- The matter is set for Annual Review Hearing (C2487) on February 1, 2005 at 8:30 am in Department 7.  The minor is ordered to appear at this hearing but is excused from appearing if LIVING OUT OF STATE.

**ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.**


DATE: February 2, 2004

_____

Theodore Weathers, Judge


Copy of Order Received By: _____     on Date: _____

                               Minor's Signature


Witnessed By: _____

                      P.O. / Clerk

ATTEST:  The foregoing is a full, true and correct copy of the original on file in this office.
         Clerk of the Superior Court.


         By _____

# Superior Court of the State of California, County of San Diego

## JUVENILE COURT MINUTE ORDER

PO: Probation To Court                                                                    **SPECIAL HEARING**

Court No: JCM203269 01   JDA No: C2487    Probation No: 20022163                    Date: October 6, 2004   Time: 8:30 am

**IN THE MATTER OF:**    FILIBERTO CHAVEZ LAMAS JR.
                         Date of Birth: December 23, 1985
                         Minor's Attorney:  (Public Defender)

JUDGE: Theodore M. Weathers                         CLERK: Gloria Carrillo
                                                    REPORTER: Rita Bowen, CSR No: 3313
DEPT:  7                                             P. O. Box 128, San Diego, Ca  92112-4104

**PRESENT BEFORE THE COURT:**

DISTRICT ATTORNEY :                                 COURT OFFICER: Shawna Berke
  Anne Marie Urrutia, Deputy District Attorney
ATTORNEY FOR MINOR:                                 PROBATION OFFICER:
  Laura Arnold, Public Defender
ALSO BEFORE THE COURT:
  The minor's presence is waived.

**THE MATTER COMES BEFORE THE COURT FOR:**

- Original 602 petition filed November 17, 2003.

**THE COURT FINDS:**

**THE COURT ORDERS:**

- THE COURT VACATES ANY FINES PREVIOUSLY ORDERED INCLUDING $20 COURT SECURITY FEE.
- Jurisdiction is terminated,  WITHOUT COMMENT BY THE COURT.
- Annual Review Hearing (C2487) set for February 1, 2005 at 8:30 am in Department 7 is vacated.

**ALL PRIOR ORDERS NOT IN CONFLICT REMAIN IN FULL FORCE AND EFFECT.**

DATE: October 6, 2004

_Theodore M. Weathers_

Theodore M. Weathers, Judge

Copy of Order Received By: _____          on Date: _____
                              Minor's Signature

Witnessed By: _____
                     P.O. / Clerk

ATTEST: The foregoing is a full, true and correct copy of the original on file in this office.
        Clerk of the Superior Court.

        By _____

JCM203269-01 10/6/2004 11:13:40 AM GCARRISP

saw the officers on scene. The officers had the screaming girl come sit on the curb in front of their house. SUSZKO and CROWNOVER brought the girl blankets.

SUSZKO overheard the girl who had been screaming while she was talking to the police. The girl stated the other vehicle involved was a Mustang, but she was unsure if it was a convertible or not. She thought the Mustang was either black or brown. The girl stated that the Mustang had a "Drew" Ford tag on the back. The girl said that earlier in the day they had had a confrontation with the subjects in the Mustang. She then said the guys in the Mustang shot her boyfriend. The girl described the passenger in the Mustang as a Latino bald man. She described the driver as a Latino male with a goatee. The female stated that her boyfriend had previously been involved in gangs, and the other guy that was with them was currently involved in gangs. She said the name of the gang was three letters, and SUSZKO thought the first letter might be an "A" but could not remember.

When asked if she saw other neighbors outside at the time of the incident, SUSZKO believed that some of the neighbors were out in front of their house a couple of doors down, to the west. She said there was a male who kept saying he was from Alaska. She did not know who he was, but the Officer spoke with him.

SUSZKO then recalled that the male passenger, who eventually went to the hospital, actually moved the body that was on the ground. She said it was as if the male wanted to be with his friend, or "homie" as he called him. SUSZKO did not seem to think the moving of the body looked unusual. The male was pretty cooperative.

Respectfully submitted,

M. ROBINSON, #171
INVESTIGATIONS DIVISION
1/9/04 12:00 PM

**CONFIDENTIAL**
This case has been released by the El Cajon Police Department pursuant to California Penal Code 11075-11081. Subsequent distribution of information contained is restricted by Sec. 11140-11144 P.C. Release of juvenile records is restricted by TNG vs Superior Court.

EL CAJON POLICE DEPARTMENT
2

000105

000365.mr.katrina

SUPPLEMENTAL TO COMMON NARRATIVE CR 04-000365
AR 04-000363
AR 04-000370

woman's voice screaming. CROWNOVER immediately grabbed her portable telephone and went to the front door. She heard the woman crying for help so she called 911. CROWNOVER heard that someone had been shot, so she told the 911 dispatchers that there had been a shooting. She explained to the dispatcher that she could not walk out any further from her house, or she would lose the reception on her telephone. She said that she could walk out as far as the corner of her garage.

CROWNOVER explained that her roommate, Katrina, came outside and was trying to get the lady who was screaming to come over and use their phone. CROWNOVER believed the lady who was screaming was named, Becky. Becky appeared to be very upset. Shortly after that, CROWNOVER saw the police cars arriving so she hung up the phone.

CROWNOVER stated at the time she went outside, the only vehicle she saw was the same vehicle that had been idling there for a long time afterwards. She believed it was the victim's vehicle, and said she remembered something hanging from the rear-view mirror. She did not remember what type of vehicle it was however.

She stated she knew most of her neighbors, as she had recently had a neighborhood get-together. She said there were a lot of people outside at the time, but there was one gentleman that she did not recognize. The gentleman kept stating he had recently come from Alaska. He was approximately 5'5" with short brown hair and possibly a moustache. He appeared to be in his forties. When asked if any of her neighbors drove Honda Civic's, CROWNOVER said she did not know, and said that she did not recall seeing any Honda Civics in the neighborhood.

CROWNOVER said she gave a blanket to the woman named Becky. Becky had said that she and someone else in the car had been in a conflict earlier in the day with the subjects in the Mustang, but she did not think it was that bad. She stated that the Mustang had been following them around for a while. Becky stated that the two guys got out of the vehicle to find out why the Mustang was following them. Becky said her boyfriend used to be in a gang, but was not any longer. She said one of his friends however, had recently started up a new gang and thought this might perhaps have something to do with the rivalry.

CROWNOVER said she and the neighbor, who lives behind her, went to ~~████████~~ ~~████████~~ to contact Becky's father and let him know what had occurred. She believed Becky's fathers name was Alfredo or Alfred.

Respectfully submitted,

M. ROBINSON, #171
INVESTIGATIONS DIVISION
1/9/04 11:40 AM

CONFIDENTIAL
This case has been released by the El Cajon Police Department pursuant to California Penal Code 11075-11081. Subsequent distribution of information contained is restricted by Sec. 11140-11144 P.C. Release of juvenile records is restricted by TNG vs Superior Court.

BENEFITS FOR MARIA SOTO STARTED 4-21-04

4-27-04 to 5-26-04
| | |
|---|---|
| Rent for the months of April/May 2004 | $1442.53 |
| Food and miscellaneous start up items April 2004 | $ 2046.46 |
| Miscellaneous food/laundry items | $ 248. 83 |
| SDG&E | $   92.20 |

5-27-04 to 6-25-04
| | |
|---|---|
| Rent for the month of June 2004 | $750.00 |
| Miscellaneous food/laundry items | $225.42 |
| SDG&E | $ 96.99 |

6-26-04 to 7-21-04
| | |
|---|---|
| Rent for month of July 2004 | $750.00 |
| Miscellaneous food/laundry items | $191.56 |
| SDG&E | $ 96.00 |
| Counseling | $280.00 |

7-22-04 to 8-23-04
| | |
|---|---|
| Rent for month of August 2004 | $750.00 |
| Miscellaneous food/laundry items | $396.11 |
| SDG&E | $ 21.04 |

8-24-04 to 9-22-04
| | |
|---|---|
| Rent for month of September 2004 | $750.00 |
| Miscellaneous food/laundry items | $100.00 |
| SDG&E | $ 25.69 |

9-23-04 to 10-25-04
| | |
|---|---|
| Rent for month of October 2004 | $750.00 |
| Miscellaneous food/laundry items | $239.99 |
| SDG&E | $ 22.63 |

10-26-04 to 11-30-04
| | |
|---|---|
| Rent for the month of November 2004 | $750.00 |
| Miscellaneous food/laundry | $100.00 |
| SDG&E | $ 22.50 |

12-1-04 to 12-30-04
| | |
|---|---|
| Rent for the month of December 2004 | $750.00 |
| Miscellaneous food/laundry | $100.00 |
| SDG&E | |
| TOTAL | $10,997.95 |

001519

On December of 2003 me and my friend Bryan Hubble went into the small storage room
to smoke a joint. Then I started to tag and ended up drawing two guns that had
41 magnum on one and 357 on the other. With a phrase that said Quit being a bitch and kill
someone. Then around Christmas or New Years eve I took the 41 magnum to my friend
Ramon. I spoke to Ramon's lawyer on many occasions, and shared this information with
him. I was told by Mr. Semco that I was a key witness and that He need me to testify. All
this occurred during Ramon's trial. When the trial ended and I was not called to testify
I was surprised and confused by this decision that Mr Semco had made.

PRINT NAME  *Francisco Soto Jr.*

SIGNATURE  *Francisco Soto Jr.*

DATE  7/22/06

State of California County of
San Diego

Subscribed and sworn to (or affirmed)
Before me on this 22 day of July 2007, by
Francisco Soto, Jr.
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.
Signature *Louisa H. Martin*
(Seal)



LOUISA H. MARTIN
NOTARY PUBLIC - CALIFORNIA
COMM. #1416049
SAN DIEGO COUNTY
My Commission Expires June 18, 2007

1    THAT'S WHY IT IS SO CRITICAL TO THE DEFENSE THAT YOU FIND

2    THAT THEY ARE NOT GANG MEMBERS AND WHY THEY SPENT SUCH

3    ENORMOUS ENERGY IN THAT REGARD.

4              LET'S TAKE MR. CONTRERAS FIRST.  WE KNOW AS

5    EARLY AS 2002 WHEN HE IS AT SCHOOL, HE IS INVOLVED IN A

6    CONFRONTATION WITH DUKE GANG MEMBERS.  WHAT DO WE KNOW

7    ABOUT DUKE GANG MEMBERS?  THEY ARE AFFILIATED WITH O.E.K.

8    AND THEY ARE RIVAL TO LOCOS.  WHEN CONTACTED BY OFFICER

9    FORSTER HE SAYS, "I BACK LOCOS."

10             THEN YOU HAVE THE BEHAVIOR ON DECEMBER 28TH,

11   WHEN HE GETS STABBED, AND HE IS COMPLETELY UNCOOPERATIVE.

12   TO THE POINT THAT HE TELLS A COMPLETELY FABRICATED STORY

13   OF HOW HE CAME TO BE THERE.  YOU HAVE MR. CONTRERAS IN A

14   CAR MURDERING A RIVAL GANG MEMBER WITH A .41 CALIBER

15   PISTOL.  A VERY UNUSUAL CALIBER.  .40'S, .44'S, .45 THERE

16   ARE A PRECIOUS FEW .41'S.

17             AT THE SAME MOMENT THAT HE IS USING THAT .41

18   CALIBER, THERE IS A BIT OF GRAFFITI ON THE WALL OF

19   MR. TORRES' HOUSE.  THE GRAFFITI IS A COUPLE OF GUNS, ONE

20   THAT SAYS CLEARLY .41 MAGNUM ON IT, WHICH IS EXACTLY WHAT

21   A .41 CALIBER GUN REALLY HAS ON IT, .41 MAGNUM RIGHT ON

22   THE BARREL.  IT'S GOT "KL," THAT WE KNOW STANDS FOR KEY

23   LARGO, PLUS .357 EQUALS 187.  187 IS THE PENAL CODE FOR

24   MURDER, AND IT IS A WELL-KNOWN PENAL CODE SECTION FOR

25   CRIMINAL STREET GANGS.

26             SO WE HAVE A PERSON WHO TWO YEARS PREVIOUSLY HAS

27   SAID HE BACKS LOCOS.  WE HAVE A PERSON WHO GOT STABBED IN

28   A GANG CONFRONTATION WITH O.E.K., AND WE HAVE A PERSON

1    SUPPORTS OR DOES NOT SUPPORT THEIR TESTIMONY.  SO IT IS

2    NOT, IS IT POSSIBLE THAT THERE WAS SELF-DEFENSE IN THIS

3    CASE?  IS THERE A RATIONAL BASIS FOR SELF-DEFENSE IN THIS

4    CASE IN A HYPOTHETICAL VACUUM?  THE QUESTION IS, WAS IT

5    SELF-DEFENSE?

6              IF YOU BELIEVE THEIR TESTIMONY, THEN YOU ARE

7    GOING TO ACQUIT.  IT'S AS SIMPLE AS THAT.  IF DO YOU NOT

8    BELIEVE THEIR TESTIMONY, THEN YOU ARE GOING TO CONVICT.

9    THAT IS THE TRUTH OF THIS.

10             IF YOU HAD HEARD THIS CASE AND IT STOPPED WITH

11   THE PEOPLE -- BECAUSE THE DEFENSE DO NOT HAVE TO PUT ON

12   ANY EVIDENCE.  IT'S NOT REQUIRED.  THEY CAN REST AND RELY

13   SOLELY ON THE CASE THAT IS PRESENTED BY THE PEOPLE AND

14   THEY CAN MAKE THEIR ARGUMENTS.

15             IF THAT HAD HAPPENED, WHAT YOU WOULD HAVE HEARD

16   IS THAT JIMMY MARTINEZ WAS GUNNED DOWN IN THE STREET.

17   THAT FILIBERTO LAMAS WAS SHOT AS HE WAS TRYING TO FLEE.

18   YOU WOULD HEAR THAT TWO PEOPLE WERE CAUGHT WITHIN TEN

19   MINUTES WITH THE MURDER WEAPONS.  YOU WOULD HEAR THAT

20   MR. TORRES LIVED IN A HOUSE WHERE ONE OF THE MURDER

21   WEAPONS IS GLORIFIED ON THE WALL AS A GANG WEAPON.  KEY

22   LARGO, YOU HAVE ALREADY SEEN THIS (INDICATING).  YOU WOULD

23   HAVE HEARD THAT MR. TORRES USED A GUN THAT WAS USED IN A

24   GANG SHOOTING THE DAY BEFORE.  YOU WOULD HAVE SEEN ALL THE

25   EVIDENCE THAT MR. CONTRERAS IS, IN FACT, A GANG MEMBER NOW

26   WE KNOW HE IS KLUMZY.

27             WE HAVE GONE THROUGH THAT BEFORE.  THERE IS NO

28   WAY THAT HE IS NOT A GANG MEMBER.  THE PEOPLE HAVE PROVED

1    KNOWING THE DEFENDANTS IN THIS CASE?

2              MR. WHITE:  OBJECTION.  HEARSAY.

3              THE COURT:  OVERRULED.

4              THE WITNESS:  HE SAID HE'S KNOWN HIM ABOUT HIS

5    WHOLE LIFE BECAUSE THEY ALL GREW UP TOGETHER AT THE KEY

6    LARGO APARTMENTS.

7    BY MR. ROMO:

8         Q    DID HE INDICATE TO YOU HOW LONG HE HAD BEEN AT

9    THAT ADDRESS?

10        A    THE CAMINO CANADA ADDRESS?

11        Q    THE CAMINO CANADA ADDRESS, YES.

12        A    I THINK HE SAID APPROXIMATELY FOUR MONTHS.

13        Q    DID YOU -- DID YOU EVER SEE THE ROOM WITH ALL

14   THE GRAFFITI IN IT?

15        A    YES, I DID.

16        Q    DID YOU EVER TALK TO MR. SLAGLE ABOUT THAT ROOM?

17        A    YES, I DID.

18        Q    DID YOU EVER ASK HIM WHO WAS RESPONSIBLE FOR THE

19   GRAFFITI IN THAT ROOM?

20        A    HE TOLD ME LARRY AND RAMON DID MOST OF IT.

21        Q    DID HE INDICATE WHETHER OR NOT MR. TORRES WAS

22   LIVING AT THAT ADDRESS?

23        A    HE SAID THAT HE WAS, AND THAT HE LIVED THERE FOR

24   APPROXIMATELY TWO MONTHS.

25        Q    DID YOU TALK TO MR. SLAGLE ABOUT MR. TORRES'

26   AFFILIATION OR MEMBERSHIP WITH ANY GANGS?

27        A    I'M SORRY.  CAN YOU REPEAT THE QUESTION?

28        Q    DID YOU TALK TO MR. SLAGLE ABOUT MR. TORRES'

1    Q    IN THAT LINE WHEN YOU ARE ASKING ABOUT WHAT'S

2    UNDER THE STAIRS, THERE IS QUOTATION MARKS.  DOES THAT

3    MEAN THAT YOU RECORDED EXACTLY WHAT MR. SLAGLE SAID ABOUT

4    THE GRAFFITI UNDER THE STAIRS?

5    A    YES.

6    Q    WHAT EXACTLY DID HE SAY ABOUT THE GRAFFITI UNDER

7    THE STAIRS?

8    A    HE SAID, "LARRY AND RAMON DID THAT ARTWORK."

9    Q    AND MR. WHITE ASKED YOU QUESTIONS ABOUT GANG

10    MONIKERS.  AND IF I HEARD YOUR CROSS-EXAMINATION TESTIMONY

11    CORRECTLY, THERE ARE TIMES -- AND SOMETIMES GANG MEMBERS

12    DO NOT HAVE MONIKERS; IS THAT CORRECT?

13    A    THAT IS CORRECT.

14    Q    AND WITH REGARD TO TALKING TO FRIENDS OF GANG

15    MEMBERS, HAD YOU HAD AN OPPORTUNITY BEFORE TALKING TO

16    MR. SLAGLE ON OTHER OCCASIONS TO TALK TO FRIENDS OF GANG

17    MEMBERS?

18    A    JUST IN GENERAL?

19    Q    IN YOUR EXPERIENCE.

20    A    YES, I HAVE.

21    Q    AND IN YOUR EXPERIENCE, DO FRIENDS OF GANG

22    MEMBERS ALWAYS TELL YOU 100 PERCENT TRUTH ABOUT THEIR GANG

23    FRIENDS?

24         MR. WHITE:  OBJECTION.  RELEVANCE.

25         THE COURT:  OVERRULED.

26         MR. WHITE:  ARGUMENTATIVE.

27         THE COURT:  OVERRULED.

28         MR. SEMCO:  FOUNDATION AS TO HOW HE KNOWS.

**INTERVIEW REPORT**
*Confidential Work Product*

DATE:        January 15, 2005

ATTORNEY (S):    Brian J. White

CASE:        Larry Torres

INTERVIEWED:    Alejandra Hurtado

## INTRODUCTION

At one time, Alejandra Hurtado was dating Larry and had friends who were gang members with the El Cajon Locos and OEK.

## DETAILS OF INTERVIEW

Alejandra said she has known Larry for approximately 15 months.

Alejandra described Larry as a typical skater.

Alejandra and Larry would go out on dates together with some of Larry's friends.

According to Alejandra, she was aware that some of Larry's friends were members of the Locos, but she didn't mind because she had friends who were gang members, too.

Alejandra said one of her best friends is Frank Soto, who happens to be a member of the El Cajon Locos.

Alejandra explained that because she was living with her mother and siblings in the Bella Vista Apartments, the area known to be frequented by the OEK gang, she had friends who were OEK members as well.

Alejandra said she knew "Hit man" (Filiberto Lamas) and Jimmy Martinez because her old boyfriend was friends with them, and they would come to the Bella Vista Apartments to visit with him.

## Trinity Private Investigations
### 11713 Via Chona San Diego, CA 92128
### Phone 858-675-3078 Fax 858-675-3058 E-mail dmbam@hotmail.com
### License # PI22855

1

to them about how bad gangs were, because when he was young, he was a gang member himself.

Alejandra described "Hit man" as a gentleman who treated her with respect, but when it came to Larry, he would get crazy.

Alejandra believed "Hit man's" attitude towards Larry was driven by jealousy because she was dating him.

According to Alejandra, after her breakup with her old boyfriend, "Hit man" would ask her out on dates.

Alejandra would always refuse because she didn't want to date gang members for fear she would be associated with them and be isolated to just that group.

Alejandra also said that when gang members were together, they were very immature and would usually get themselves into trouble.

Alejandra said she does not hang around gangs, but individuals who happen to be   gang members.

According to Alejandra, there was a time when OEK and Locos were not enemies and would be seen hanging out together.

However, that all changed when an incident occurred between the Locos and OEK, which involved a kid.  Alejandra did not know who the kid was or exactly what happened.

Alejandra said after that incident occurred, all the fighting and stabbing began.

Because Alejandra was neutral and not associated with any gang, she was constantly being pressured by her friends who were gang members to choose sides.

After the stabbing incident took place between the two gangs where two of her close friends, Frank Soto and Ramon, were stabbed, she hated the OEK gang.

Alejandra said she could not believe they would do something like that to them.

Alejandra recalls "Hit man" informed her to tell Larry to watch his back, because they were going to get him sooner or later.

Alejandra didn't want to tell Larry about "Hit man's" threat, because she feared he would get angry, but instead Larry told her he didn't care what they said.  He said he wasn't

**Trinity Private Investigations**
11713 Via Chona San Diego, CA 92128
Phone 858-675-3078 Fax 858-675-3058 E-mail dmbam@hotmail.com
License # PI22855

2

what they did anymore.

Alejandra recalled being asked to leave a New Years Eve party at Ryan Slagle's apartment because she brought her cousin who is known to be friends of the OEK.

Alejandra said that her cousin was engaged at the time and was not hanging out with anyone from OEK, but they didn't want her there because they didn't trust her.

Alejandra stated that Larry was told by some of his friends to watch his back with her as well because they didn't trust her either.

According to Alejandra, both gangs were becoming paranoid of each other, and she and Larry were being pressured to choose sides.

Larry even moved to Lakeside to live with Ryan and Elaina to get away from the gangs.

Alejandra stated that OEK, in reference to Larry, gave her an ultimatum stating "It's him or us."

Larry and Alejandra eventually stopped seeing each other in May, 2003, but started to communicate again in December, 2003, just prior to the shooting.

When asked why she stopped seeing Larry, Alejandra said it was something that just developed.

Alejandra said she didn't contact him because she knew he was dating someone else, and she didn't want to interfere with his relationship.

On the day of the shooting Alejandra said she spoke to both Larry and Ramon and everything seemed normal to her.

I asked Alejandra how anyone would know Larry was in a Mustang that evening.

Alejandra said that among her friends there is so much gossip, you can't do anything without someone finding out about it. Especially when it comes to who you're with and what you were doing.

Alejandra recalled the car wasn't even Larry's, but belonged to Elaina Welch, Ryan Slagle's girlfriend.

When asked if Alejandra was at Ryan and Elaina's apartment and was aware of the room under the stairs, she said she was.

**Trinity Private Investigations**
11713 Via Chona San Diego, CA 92128
Phone 858-675-3078 Fax 858-675-3058 E-mail dmbam@hotmail.com
License # PI22855

3

Alejandra described the room as a dark with a black light inside, little kid stuff drawn on the walls, and a poster of Pamela Anderson on the ceiling. Alejandra made it clear that she knows what gang graffiti looks like, and the drawings on the walls were definitely not gang related.


**END OF REPORT**

INV: DMB

**Trinity Private Investigations**
11713 Via Chona San Diego, CA 92128
Phone 858-675-3078 Fax 858-675-3058 E-mail dmbam@hotmail.com
License # PI22855

4

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **Ramon Ivan Contreras** | **A. Hedgpeth** |

**2008 MAR 26  PM 4: 05**

**CLERK US DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

BY_____ DEPUTY

| (b) COUNTY OF RESIDENCE OF FIRST LISTED **Kern** PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| **Ramon Ivan Contreras** **PO Box 6000** **Delano, CA 93216** **V-99014** | **'08 CV 0572 DMS POR** |

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)  FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28 U.S.C. 2254

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|

| DATE | March 26, 2008 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|---|

149130 <u>CC</u> 3/26/08
$5.00

# UNITED STATES
# DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

# # 149130   — SH

## March 26. 2008
## 16:02:47

## Habeas Corpus
USAO #.: 08CV0572
Judge..: DANA M SABRAW
Amount.:                    $5.00 MO
Check#.: 12357888660

## Total—> $5.00

FROM: CONTRERAS V. HEDGPETH